ABRAHAM BILAFSKY *vs.* CONVEYANCERS TITLE INSURANCE
COMPANY & others.

Suffolk.    March 7, 1906. — September 4, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Conspiracy.    Deceit.    Practice, Civil,* Verdict, Exceptions.

In an action of tort alleging a conspiracy, if the gist of the action is not the conspiracy but a tort which it is alleged that the defendants committed jointly, the acts alleged to have been done by the conspirators are not actionable unless they would have been actionable had they been done by the defendants severally.

Where the parties to an oral contract differ as to what are their respective rights under it, and one of the parties to the contract, relying upon the soundness of the claim of the other party based on his assertion as to what the contract is in fact or in law, makes a voluntary payment of money to that party, and afterwards it turns out that the claim was unsound, the party who paid the money cannot maintain an action of tort for deceit against the party who made the claim which he chose to admit.

Where in a single count of the declaration in an action of tort damages are claimed under separate independent items and a general verdict is returned for the plaintiff on the whole count in a round sum, if the presiding judge refused to give a ruling requested by the defendant which was correct and material as to some of the items the verdict cannot stand and an exception to the refusal of the ruling must be sustained.

TORT OR CONTRACT, the first count being in tort and the second in contract on an account annexed. Writ dated November 18, 1898.

At the trial in the Superior Court before *Aiken*, C. J. the plaintiff, having been required by the court to elect, elected to go to the jury upon the first count, and a verdict was ordered for the defendants upon the second count.

The first count contained allegations that the defendants Bowditch, Edes and the Conveyancers Title Insurance Company entered into a conspiracy and conspired to deceive and defraud the plaintiff in the matter of the accounts and accounting existing and continuing between him and them, and carried into effect their combination to deceive, oppress and defraud him in the accounts and accounting by false representations and statements, that he believed the representations to be true, acted thereon and was defrauded of the following sums:

First Item.    The sum of $2,350 on certain transactions relat-

ing to a loan of money by the defendant company for the con-struction of certain buildings on Westland Avenue in Boston.

Second Item.    The sum of $4,312.50 on certain transactions relating to the loan of money by the defendant company for the construction of certain buildings on Beacon Street in Brookline.

Third Item.    The sum of $296.68 on interest represented to be due to the defendant Bowditch.

Fourth Item.    The sum of $1,000 on brokerage commission represented to be due to the defendant Bowditch.

Fifth Item.    The sum of $405 on interest represented to be due to the defendant company.

Sixth Item.    The sum of $170.80 on insurance premium payments represented to be due to the defendant company.

The facts in regard to the several items are stated in the opinion.

At the close of the evidence each of the defendants asked the Chief Justice to make the ruling, which is quoted in the opinion, that there was no evidence to warrant a finding in favor of the plaintiff against that defendant alone or with either or both of the other defendants.

The Chief Justice instructed the jury that it was competent for them to find for the plaintiff the following sums and no more :

Under Item " First,"

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ($2,350 reduced, by admission, at the trial, to $1,450) | | | | | | | | $1,450. |
| Under Item " Second " | . | . | . | . | . | . | | 4,312.50 |
| "   "   " Third " | . | . | . | . | . | . | | 296.68 |
| "   "   " Fourth" | . | . | . | . | . | . | | 1,000. |
| "   "   " Fifth " | . | . | . | . | . | . | | 405. |
| "   "   " Sixth " | . | . | . | . | . | . | | 170.80 |
| A total of | . | . | . | . | . | . | . | $7,634.98 |

with interest from the date of the writ, November 18, 1898, to the date of the verdict.

The jury returned a general verdict for the plaintiff in the sum of $10,101.98, which afterwards by requirement of the Chief Justice was reduced to $9,089.35.    The defendants alleged exceptions, inserting for the purpose of shortening the record the admissions which are quoted in the opinion.

*H. W. Chaplin*, (*C. Warren* with him,) for the defendants.

*J. C. Ivy*, (*C. S. Ensign, Jr.* with him,) for the plaintiff.

LORING, J.   This is one of those cases where the allegations as to conspiracy are at most allegations that what is alleged to have been done was done jointly.   In such a case the acts alleged to have been done by the conspirators are not actionable unless they would have been actionable had they been done by the defendants severally.   *Matthews* v. *Bliss*, 22 Pick. 48.   *Parker* v. *Huntington*, 2 Gray, 124.   *Hayward* v. *Draper*, 3 Allen, 551.   *Randall* v. *Hazelton*, 12 Allen, 412.   *Bowen* v. *Matheson*, 14 Allen, 499.   *Rice* v. *Coolidge*, 121 Mass. 393. *Boston* v. *Simmons*, 150 Mass. 461.   *May* v. *Wood*, 172 Mass. 11.   *Converse* v. *United Shoe Machinery Co.* 185 Mass. 422.*

The plaintiff in his declaration counts on false and fraudulent representations made by the defendants, on which he relied and was defrauded out of the six items there set forth.

Laying aside for the moment two sums of $3,000 and $2,000 (part of item two), for which the plaintiff gave the defendant corporation a check for $5,000, and possibly the sum of $250, for which the plaintiff gave a check in connection with the third item, the way, and the only way, in which the plaintiff undertook to make out a case in proof of the allegations of the declaration was by showing that the defendants claimed the sums in question as due under the contracts which had been made between the defendant corporation and the plaintiff, and in one case between the plaintiff and the defendant Bowditch, and that the difference between the plaintiff and the defendants was not a matter of accounting under a contract, but a difference as to what the contracts made were.

We will take the several items in their order.   Item one grew out of a construction loan and a subsequent time loan made by the defendant corporation to the plaintiff, to enable him to erect two apartment houses on a lot of land on Westland Avenue, Boston.   The defendant corporation advanced to the plaintiff under the construction loan $60,000, in which was included $2,500 which the defendants testified was a lump sum agreed upon for the use of the money so lent.   For making the notes given for the time loan carry interest at four and one. half per

---

* See *Pickett* v. *Walsh*, *post*, 572.

cent instead of five per cent (which was the defendants' original offer), the defendants contended that the plaintiff agreed to pay $1,800. The defendants also contended that the construction loan was limited to $60,000, and that the plaintiff agreed to pay $250 to the defendant corporation for making advances beyond that amount. The plaintiff contended on the other hand that he was to pay four and one half per cent on the money lent. The difference between the three sums claimed by the defendants and the interest at the rate alleged by the plaintiff to be the rate agreed upon made up the first item of $1,450 in amount.

The second item is similar to the first, apart from the giving of the $5,000 check already referred to. The sums involved in this item arose out of a construction loan and a time loan to enable the plaintiff to build two apartment houses on a lot of land on Beacon Street in Brookline. The defendants' contention was that for the use of the first $60,000 lent on the construction loan the corporation was to be paid the lump sum of $2,500; and for advances under the construction loan beyond the amount to which that loan was originally limited, the lump sum of $3,000; and for extending the construction loan and making it a time loan, a lump sum of $2,000. Here again the plaintiff's contention was that the agreement was that he was to pay interest at the rate of four and one half per cent; and the difference between the two makes the second item, amounting to $4,312.50.

The third item (apart from a question arising under a check for $250 produced by the plaintiff) was the same. Here it was the plaintiff who contended that a lump sum was to be paid for a loan made by the defendant Bowditch under what was in effect a second mortgage, but was technically a third mortgage on the Beacon Street land. The defendants contended that the plaintiff was to pay interest at the rate specified (twelve per cent a year) amounting to $296.68; the plaintiff that the lump sum to be paid was $250, for which sum he produced a check. His claim was to recover back the whole $296.68 which was retained out of the plaintiff's money in the hands of the defendant corporation.

The fourth item arises from the fact that the defendant Bowditch acting for the plaintiff received the purchase money

due the plaintiff for an exchange of the Westland Avenue land for other land and $20,000. Bowditch kept $1,000 out of the $20,000, under a claim of a commission due him for his services in that matter. The plaintiff contended that nothing was due from him to Bowditch in that connection.

The fifth item is this: The mortgage loan for the Beacon Street land originally carried interest at four and one half per cent. When the loan was extended it was extended at five per cent. The agreement of extension provided that if the interest was in arrears the mortgagee might "treat this agreement as wholly null and void." The interest being in arrears after the extension, the defendant corporation, the mortgagee, gave notice of its election that the notes should become due. The plaintiff contended that this reinstated the original rate of four and one half per cent, and the defendants insisted on interest at five per cent, which the plaintiff paid. The difference between the two was $405, the amount of this, the fifth item.

The sixth and last item was for $170.80, paid by the defendant corporation for a "demolition" rider on the policies of insurance taken out for its benefit by the plaintiff. The defendants' contention was that under the clause in the mortgage the plaintiff was bound to keep the property insured against the risk covered by this rider. The plaintiff having failed to do it, the defendant corporation took out the riders and brought an action against the plaintiff for payment of the sum paid by it therefor, which the parties seem to have agreed was $170.80. The plaintiff on being sued paid the money before the writ was returnable, and the writ never was entered. The sixth item was to recover this sum of $170.80.

Apart from the two checks already referred to it is plain that the plaintiff in the case at bar did not make out a case of fraud and deceit unless a party to a contract is to be taken to have made a false and fraudulent representation of fact when he puts forward a claim based on an assertion that the contract was in fact or in law one thing and the other party to the contract controverts his claim and denies his assertion, and the jury believes the other party. But where one party to a contract makes a claim based on his assertion as to what the contract is, he does not make a representation of fact for the purpose of the other

party to the contract acting on it nor does he make a representation of fact upon which the other party has a right to rely. That a claim is not a representation of fact was one of the grounds on which *Berkshire Ins. Co.* v. *Sturgis*, 13 Gray, 177, was decided. To hold that making a claim is making a representation of fact would be in effect to overturn the rule that a payment made voluntarily cannot be recovered back. Where a payment has been made voluntarily, it is ordinarily, if not always, made after a claim has been put forward by the party who ultimately receives the payment that the payment was due. If claiming the money to be due is a representation of fact on which the debtor paying can rely, all sums voluntarily paid but not legally due can be recovered back in an action for fraud and deceit. Granting that the claim is a representation of fact, a case of fraud and deceit is made out in case of the voluntary payment of such a sum by the plaintiff's testifying that the claim was made, that he relied upon that, and relying on it, paid. That is enough to make out the whole case, for that would warrant the jury in finding the *scienter* proved, since the defendants must have known what the fact was, and knowing the fact yet made the claim which, by the verdict, they subsequently found to be a claim without foundation.

At the close of the evidence " each of the defendants in respect of each several item of money claim in the first count, — the same being the claims numbered First to Sixth towards the close of said count, — " requested " the court to instruct the jury that there is no evidence to warrant a finding in favor of the plaintiff against such defendant either alone or with either or both the other defendants." The presiding judge took a general verdict on the first count of the declaration covering all six items. It is apparent from what has been said that this ruling should have been given, at least so far as the first, fourth, fifth and sixth items are concerned ; and for this reason the general verdict cannot be sustained.

The bill of exceptions sets forth testimony which would have warranted a jury in finding that the plaintiff was an illiterate man of Russian extraction, and that he relied upon the defendants for advice and for keeping an account of the payments made in the course of the transactions between them. But there was no evidence that the plaintiff paid the defendants or any of

them for so doing; and the action which the plaintiff has brought here is an action for fraud and deceit, and not an action against a fiduciary. In an action for fraud and deceit the only significance of this evidence is in its bearing on the fact (which the plaintiff must make out in proof) that he relied on the representations made by the defendant or defendants, as to which see *Light* v. *Jacobs*, 183 Mass. 206, and cases there cited. But since in our opinion there was no representation of fact, at least so far as the first, fourth, fifth and sixth items are concerned, that evidence is not material here.

Again, the bill of exceptions contains these statements: "In order to shorten this bill of exceptions and to reduce the amount of detailed evidence which it would otherwise be necessary to insert herein, the defendants hereby admit for the purposes hereof, that there was evidence at the trial upon which it was competent for the jury to find that if said several sums were severally obtained from the plaintiff and obtained from him by untrue representations, such representations were made with knowledge of the falsity thereof on the part of those who made them, severally, and were by such defendant or defendants made with intent to defraud. . . . For the purposes hereof the defendants also waive any objection to joinder and stipulate that if and in so far as a verdict could have been found upon the count in tort against any defendant in tort, it might have been found against all the defendants jointly." "The evidence hereinbefore recited coupled with the concessions and admissions hereinbefore made was all the evidence material to this bill of exceptions."

As we are of opinion that in case of the first, fourth, fifth and sixth items at least no representations of fact were made, these concessions are of no consequence.

Under these circumstances it is not necessary to consider whether the fact that the money which the plaintiff alleges to be due to him in case of the first and the fourth items never left the defendants' hands is not another insuperable difficulty in the way of the plaintiff's maintaining this action for those sums.

We have no doubt that so far as the plaintiff's testimony as to his giving the check for $5,000 for two of the three sums making up the gross claim in connection with the second item

is concerned, the plaintiff made out a case of fraud and deceit. He testified that that check, " (if the signature was in fact his,) was obtained from him surreptitiously, and without his knowledge, and by a fraudulent shuffling of the various papers of the transaction, among which, upon his testimony, were a large number of insurance slips."

Whether a case of fraud and deceit was made out as to the check for $250 need not be considered.

*Exceptions sustained.*