HENRY W. SAVAGE, INCORPORATED, *vs.* CHARLES H.
WHEELOCK & another.

Suffolk. . April 8, 1918.—May 22, 1918.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & PIERCE, JJ.

*Contract,* Implied in law.  *Deceit.   Fraud.   Conspiracy.   Agency,* Broker's
commission.

An action of contract for money had and received cannot be maintained against
two defendants jointly to recover money received to the plaintiff's use by only
one of them.

In an action of tort by a real estate broker against a real estate dealer and another
real estate broker, charging the defendants with having conspired to procure
through fraud the payment to the defendant broker of a commission on the pur-
chase of a house by the defendant real estate dealer that really had been earned
by the plaintiff but had been relinquished by him induced by the fraud of the
defendants, there was evidence on which it could have been found that the
plaintiff, having been employed by the owner of the house to sell it, offered it
to the defendant real estate dealer at a certain price, and that the defendant
dealer declined to buy it at that price and then asked the defendant broker to get
the house for him at the lowest price possible, that the defendant broker then
went to the owner and told him that he could sell the house for him if he would
employ him as his broker, which the owner did, agreeing to pay him a certain
commission on the sale, that the defendant dealer told the defendant broker to
conceal his name in the transaction and the broker deceitfully prevented the
owner and the plaintiff from discovering that the defendant broker represented
the defendant dealer who had declined the offer made through the plaintiff, that
the plaintiff, believing that the defendant broker represented another pur-
chaser, wrote to the owner stating that he should not ask the owner to pay him
a commission in case the owner sold the house to the defendant broker's cus-
tomer, that the house then was sold through the defendant broker for the same
price at which it originally had been offered by the plaintiff to the defendant
dealer, who paid no commission, and who had reason to infer that the defend-
ant broker was paid by the owner, although he had been employed by the defend-
ant dealer to buy the house for him at the lowest possible price.  *Held,* that there
was evidence for the jury of a joint tort committed by the defendants, whereby
the plaintiff was deceived into the belief that a new customer had been procured
and was induced to relinquish the collection from the owner of the commission
on the sale of the house to which he lawfully was entitled.

In the same case it was *held* that on the facts disclosed it could not be said as matter
of law that the plaintiff did not make the investigation that he ought to have.
made in failing to ask the defendant dealer or the defendant broker, or both of
them, who the defendant broker's customer was.

TORT OR CONTRACT, by a corporation engaged in business as a
real estate broker, against Charles H. Wheelock, another 'real

estate broker who had no office and was not a member of the real estate exchange, and Henry S. Moody, a real estate dealer engaged in the business of buying and selling real estate, to recover the amount of a commission upon a sale of the house and land of one Mrs. Glazier, numbered 772 on Washington Street in Brookline, which the plaintiff was prevented from collecting by the wrongful and fraudulent acts and deceits of the defendants, the declaration, besides two counts in tort, also containing a third count for $625 as money had and received by the defendants to the plaintiff's use. Writ dated July 30, 1915.

In the Superior Court the case was tried before *White*, J. The evidence is described in the opinion. At the close of the evidence the defendant Moody and the defendant Wheelock each filed a motion asking the judge to order a verdict in his favor. The judge denied these motions and submitted the case to the jury, who returned a verdict against both defendants in the sum of $1,000, of which by order of the judge the plaintiff remitted all in excess of $625. The defendants alleged exceptions.

The case was submitted on briefs.

*J. H. Devine,* for the defendant Wheelock.

*I. C. Hersey, J. F. Warren & E. H. Palmer,* for the defendant Moody.

*H. G. Allen, W. P. Meehan & C. H. Donahue,* for the plaintiff.

Loring, J. The defendant Moody, wishing to buy a house owned by a Mrs. Glazier for less than it was offered to him by the plaintiff corporation (which had it for sale for the owner), asked the defendant Wheelock (a real estate broker who had no office but did business at the house where he lived) to get the house for him for the lowest price at which it could be bought. Thereupon Wheelock saw Mrs. Glazier's son (who acted for his mother throughout) and told him that he could sell the house for him if he would employ him as his broker. While Wheelock was still in his office at that time Glazier (the son) called up the plaintiff on the telephone in Wheelock's presence and had a conversation with one of its officers. This conversation will be stated later on. Glazier then employed Wheelock to sell the house as broker for his mother. After some offers back and forth, made through Wheelock, the house was sold to Moody for the price at which it was offered to him by the plaintiff. When Moody first spoke to

Wheelock he told him not to surrender his name and the contract was made between Mrs. Glazier (acting through her son) and Wheelock. It was provided in the contract that a commission of two and one half per cent (being the usual commission in such a case) should be paid by Mrs. Glazier to Wheelock. The contract was signed on April 6, 1915; on April 13 the papers were passed and the commission was paid by Mrs. Glazier to Wheelock and on that day Mrs. Glazier conveyed the house to Wheelock and Wheelock conveyed it to Moody. Later on the plaintiff found out that Wheelock's customer and its customer were one and the same person. Upon finding out that fact and the fact that the house had been sold through Wheelock for the price at which it had been offered to Moody by it, the plaintiff brought this action to recover the commission paid Wheelock on the ground that the commission had been earned by it and wrongfully paid to Wheelock. At the trial each of the defendants asked the judge to direct the jury to return a verdict for him, and the case is here on exceptions taken to his refusal to do so. No exception was taken to the charge and the record does not disclose what the charge of the presiding judge was.

The plaintiff has placed great reliance upon *Gormley* v. *Dangel,* 214 Mass. 5. That case is an authority for the plaintiff to some extent, but it does not go as far as we are asked to go in the case at bar. In that case a broker who had earned a commission brought an action for money had and received against one who through fraud had induced the owner to pay the commission to him on the ground that he (the defendant) had earned it. It was held that he could recover. There is a count for money had and received in the case at bar. But the action in the case at bar is brought against Moody and Wheelock jointly and there was no evidence that any part of the commission ever came into Moody's possession. The fact that the money was received by one defendant only is fatal to the plaintiff's right to maintain a count for money had and received in an action brought against the defendants jointly.

But besides the count for money had and received the declaration contained two counts in tort. They were in effect counts charging the defendants with having conspired to procure through fraud the payment to Wheelock of the commission earned by the

plaintiff. The requests for rulings were not based upon the pleadings. The question on the counts in tort therefore is whether on the evidence the jury were warranted in finding that Moody and Wheelock conspired together to secure the payment to Wheelock of the commission earned by the plaintiff without regard to the particular allegations contained in these counts.

A case of fraud on Wheelock's part was made out by his own testimony supplemented by the contract with Glazier signed by him with his own hand. Wheelock testified that: "In dealing with Mr. Glazier he [Wheelock] endeavored to get the property for Moody as cheaply as possible." At the same time he (Wheelock) asked Glazier to employ him as his (Glazier's) broker and in answer to the question, "You wanted Mr. Glazier to understand you would use your best efforts to get the best price you could for his property?" he answered, "The best terms, yes, sir." In and by the contract signed by Wheelock it was provided that Mrs. Glazier should pay Wheelock a commission; as matter of construction that meant that she should pay him a commission as her broker. That made out a case against Wheelock of receiving a commission which he knew he had not earned. That is to say, a case of fraud on Mrs. Glazier was made out by the evidence just stated.

Whether a case of fraud on the plaintiff was also made out in evidence is another and further question. Wheelock now contends that in competition with the plaintiff he had a right to earn a commission if he induced Moody to pay more for the house than the plaintiff induced him to pay for it. But that was not Wheelock's position when (in the conversation we have referred to) a representative of the plaintiff was asked by telephone a question by Glazier in Wheelock's presence to find out whether the plaintiff's customer and Wheelock's customer were one and the same person. The circumstances attending this conversation were these: When Wheelock first called on Glazier, Glazier in Wheelock's presence called up the plaintiff on the telephone and told the plaintiff's representative who answered the telephone (Stimpson by name) that he had a customer for the house and he asked him (Stimpson) what his (Glazier's) position would be with regard to a commission to the plaintiff if he (Glazier) sold the house. To this Stimpson answered that if Glazier found a purchaser himself he was not

certain "that the plaintiff could claim a commission." It is to be assumed that this answer was not heard by Wheelock. To this Glazier said (and this Wheelock did hear): "This man is not a customer, he is a broker, but he won't disclose his principal's name;" Glazier (still in Wheelock's presence) then asked Stimpson what his customer's name was. Stimpson said "Powers." Then Glazier asked Wheelock if his customer's name was Powers. And he (Wheelock) said: "He would say that much, that this man's name was not Powers." By reason of a fact not known to Glazier this was an evasive answer and one which the jury were warranted in finding was intended to deceive the plaintiff. On this answer being given by Wheelock, Glazier (still speaking on the telephone) said to the plaintiff: "That is not this broker's client." The fact which made this answer an evasive answer intended to deceive the plaintiff was that, when Moody first saw Wheelock and asked him to get the house for him as cheaply as he could, he (Moody) told Wheelock that he was buying the house for his daughter Mrs. Powers. Wheelock's answer was not that the plaintiff's customer and his were different persons. He had every reason to suppose that they were one and the same person. Wheelock knew that the house was being bought by his customer for Mrs. Powers. His answer was as just stated: "He would say that much, that the man's name was not Powers." And Wheelock's position was not the innocent position which he now asserts that he had a right to take, namely, to earn a commission by getting a better price for the house than the plaintiff succeeded in getting although he got that price from the person who had applied in the first instance to the plaintiff. He told a half truth often more misleading than a whole lie. The position he then took or could have been found by the jury to have taken was: "I want you to believe that my customer is not the person that the plaintiff has secured as a possible customer and for that reason I shall be and the plaintiff will not be entitled to a commission if you sell to my man no matter what price I succeed in getting him to give." If the jury did find that, they would have found in effect that Wheelock intended to commit a fraud on the plaintiff as well as a fraud on Glazier. We are of opinion that on the evidence a case of fraud on the plaintiff was made out so far as Wheelock was concerned.

We come now to the case against Moody. If Moody knew that Wheelock had been employed by Glazier and was to receive a commission from his (Glazier's) mother although he was really acting for him (Moody) the jury were warranted in finding that Moody intended to get Wheelock's services in his (Moody's) interest and have Wheelock paid for so doing by Glazier's paying to Wheelock the commission due the plaintiff if he (Moody) bought the house for the price at which it was offered to him by the plaintiff. There is no direct testimony that Moody knew that at Wheelock's request Glazier had employed him as Mrs. Glazier's broker. But the circumstances in evidence warranted the jury in finding that he knew that fact. And the fact of a conspiracy is one of the facts which are rarely if ever proved by any but circumstantial evidence. The circumstances in evidence were these: Moody was a dealer in real estate of many years' standing; he knew that the trade had gone through, that he had received title to the house and that Wheelock had not asked him for a commission. The jury were warranted in finding that Moody knew that Wheelock did not work without pay and from that and the other facts in evidence that he got his pay from Glazier and that to this Moody made no objection. In addition Moody is at least *prima facie* chargeable with knowledge of the contents of the contract signed by Wheelock for him as undisclosed principal by which Glazier agreed to pay Wheelock a commission. It is to be borne in mind also that Moody told Wheelock not to disclose the fact that he was his principal and that when he accepted the offer which he did accept on its being brought to him by Wheelock he knew that he was accepting the same offer (or substantially the same offer) that was made to him by the plaintiff and refused by him at that time. And finally when Moody first called on the plaintiff as the broker who had the house for sale he passed himself off (or at least the jury could so find) as a man by the name of Powers and the only address given by him to the plaintiff was the number of a telephone in a house in Milton where his former wife and his daughter Mrs. Powers lived although he was and had been for years a dealer in real estate with an office in Boston. Lastly Moody lied (or rather the jury were warranted in finding that he lied) as to his relations with Wheelock. Moody testified that: "He first met Wheelock

about two months before March, 1915." Wheelock testified "that he first met Moody fifteen years ago."

·In addition it appeared in evidence that on April 6 the plaintiff wrote Glazier a letter, and later on before the papers were passed one of the plaintiff corporation's officers told Glazier that, inasmuch as they were acting on suspicion but did not know that their customer and Wheelock's were one and the same person, they should not ask Mrs. Glazier to pay a commission to them in case a sale was made to Wheelock's customer, and that they then said that they took this course of action because they did not want to stand in the way of Mrs. Glazier making a sale of the house.

We are of opinion that on the evidence the jury were warranted in finding that the defendants conspired fraudulently to represent to the plaintiff that Wheelock's customer was not the plaintiff's customer, knowing that representation to be false, and that the plaintiff relying on that representation waived its right to collect from Mrs. Glazier the commission in fact earned by it when she sold her house to Moody for a price at which it had been offered to him by the plaintiff. That is to say, the case at bar comes within that class of cases where the existence of a conspiracy is important as proof that the tort which was committed was a joint tort as was said of the case then before the court in *Bilafsky* v. *Conveyancers Title Ins. Co.* 192 Mass. 504, 506. It is not necessary to consider the broader doctrine that an action of tort lies whenever two or more persons conspire to do an unlawful act or a lawful act by unlawful means to the prejudice of the plaintiff. For this authority is to be found in *O'Callaghan* v. *Cronan,* 121 Mass. 114, 115, *Cook* v. *Brown,* 125 Mass. 503, *Garst* v. *Charles,* 187 Mass. 144, *Spaulding* v. *Knight,* 116 Mass. 148, *Revere Water Co.* v. *Winthrop,* 192 Mass. 455, 458, *DeWolfe* v. *Roberts,* 229 Mass. 410; and cases there collected. But there is some conflict on the point at least in what is said in some of the opinions of this court. See *New England Foundation Co.* v. *Reed,* 209 Mass. 556, 560; *Parker* v. *Huntington,* 2 Gray, 124; *Livermore* v. *Herschell,* 3 Pick. 33.

The first contention of the defendants in answer to this case is that the plaintiff voluntarily released Mrs. Glazier from her obligation to pay the plaintiff a commission and so is estopped to claim the commission paid by her to Wheelock. That is not inconsistent with the present proceeding. On the contrary it is the

gravamen of the action now before us. The gravamen of the action now before us is that the plaintiff was induced to forego collecting from Mrs. Glazier the commission in fact earned by it in reliance upon the defendants' false and fraudulent representation that Wheelock's customer was a different person from the customer procured by it.

The next contention made by the defendants in answer to this case is that, if the plaintiff had made the inquiries it ought to have made it would have learned that "Powers" and Moody were one and the same person and that person was Wheelock's customer. We assume that the defendants rely on the doctrine stated in *Rollins* v. *Quimby,* 200 Mass. 162, *Thomson* v. *Pentecost,* 206 Mass. 505, *Forbes* v. *Thorpe,* 209 Mass. 570, *Townsend* v. *Niles,* 210 Mass. 524, *Noyes* v. *Meharry,* 213 Mass. 598, and cases there collected and cited. If the plaintiff's officer who saw "Powers" had called upon Moody he would have seen that Moody and "Powers" were one and the same person. But that would not have brought to his knowledge the fact that that person was Wheelock's customer. In considering whether the plaintiff did or did not make the investigation it ought to have made, the matter must be looked at as it presented itself to the plaintiff at the time. In the first place the plaintiff had asked Mr. Glazier to ask Wheelock if his customer's name was Powers and it had been told by Glazier that Wheelock said that his customer's name was not Powers. The plaintiff also had been told by Glazier that Wheelock's customer had instructed him (Wheelock) not to disclose his name. It cannot be said under these circumstances that as matter of law the plaintiff did not make the investigation it ought to have made in that it did not call on Moody or Wheelock or both and ask them who Wheelock's customer was.

The terms of the sale actually made to Moody differed in minor details from those contained in the offer made to Moody through the plaintiff. The two were in substance the same. No argument in this connection has been made by the defendants. For that reason it is not necessary to go into the matter further.

We have found nothing in the cases cited by the defendants which requires notice.

*Exceptions overruled.*