GILL EQUIPMENT COMPANY *vs.* SAMUEL J. FREEDMAN.

Suffolk. April 9, 1959. — June 1, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Contract*, Implied, Money had and received, Check. *Payment. Bills and Notes*, Check.

In an action for money received by the defendant to the plaintiff's use, findings that the defendant wrongfully appropriated a check, delivered to him by the plaintiff and intended by the plaintiff to be a down payment on his purchase of a diesel shovel, by failing to control the use of the check or the use of the proceeds thereof when cashed, and that the defendant was liable for its amount were warranted by evidence that in transactions respecting purchase of the shovel the defendant acted as a broker or agent of the seller and expected to receive a commission on its sale and effected the contract of sale, that, following revelation of an outstanding conditional sale agreement covering the shovel and to enable the seller and the defendant to go through with the transaction, the check, payable to both of them, was delivered to the defendant upon his signing a receipt therefor in behalf of himself and the seller and upon the defendant's assumption of "personal

responsibility" for the proper application of the check, that the check was in the defendant's control, that it was immediately indorsed by both the defendant and the seller and cashed while both were at a bank teller's window, and that the sale of the shovel was never completed or the proceeds of the check restored to the plaintiff.

CONTRACT. Writ in the Municipal Court of the City of Boston dated February 10, 1953.

Upon removal to the Superior Court, the action was heard by *Brogna*, J.

*Edward O. Proctor*, (*Arthur J. Santry* with him,) for the defendant.

*James G. Fay*, (*Arthur L. Brown* with him,) for the plaintiff.

CUTTER, J. This is an action of contract for money received by the defendant to the plaintiff's use. A bill of particulars, added by amendment of the declaration, showed "1. Proceeds of a check . . . of $15,000, dated January 30, 1948, drawn on The National Metropolitan Bank and payable to the defendant and Anthony J. Forte . . . $15,000. 2. Interest on Item 1 . . . ." The bill of particulars was later amended, subject to the defendant's exception, by striking out the first three words "Proceeds of a." The defendant filed a general denial. At the pre-trial it was stipulated that the amount involved was $10,000[1] and interest and "that the plaintiff does not charge the defendant . . . with fraud." The judge of the Superior Court who heard the case without a jury found for the plaintiff for $16,193.33. The defendant's bill of exceptions presents the question of the propriety of the judge's denial of certain requests for rulings. The facts stated below could have been found by the judge upon somewhat conflicting testimony.

In January, 1948, the defendant was in Washington, D. C., trying to sell for one Forte a large, used, diesel operated, 50-ton shovel then at Silver Springs near Washington, except for certain accessories which were at Bath, New York. He met with one McKinley (an agent of the plaintiff work-

---

[1] $5,000 was repaid to the plaintiff by Forte on account of the check, which reduced the amount claimed.

ing on a commission basis) and one Gill, president of the plaintiff, a company engaged in selling new and used construction equipment. It could have been found that the defendant told the plaintiff's representatives that he owned the shovel. Gill inspected the shovel and decided to purchase it. Two sets of contracts were drawn covering its sale, the later set by one Cragun, attorney for the plaintiff. Each contract described Forte as the owner of the shovel. The later contract named a price of $56,305 f.o.b. Silver Springs for the shovel (free of all encumbrances) exclusive of certain accessories, and stated that "the buyer does herewith pay to the seller . . . $15,000 on account of said purchase price." The later contract was signed on January 17 by Gill, who gave it to the defendant with a check for $15,000, payable to Forte, with instructions that the check was to be given to Forte when he signed. This was done. Payment was later stopped on the check when Forte reported that he had lost it. A second check, also payable to Forte, was then issued, on which payment also was later stopped.

At some time it was learned that the shovel was subject to a conditional sale agreement, that Forte had found the first check, and that a firm in Maryland had cashed it. The defendant asserted to Gill that Cragun had told the defendant that he would advise Gill to remove the stop order. Gill had not done this and so informed the defendant. There were discussions and telephone conferences about clearing the title to the shovel. On January 28, the plaintiff's auditor sent Cragun $15,000 in New York funds payable to Cragun as escrow agent with instructions that, when Forte had furnished a bill of lading and bill of sale for the shovel, this sum and other funds then held by Cragun were to be turned over to him. Gill testified that, on January 29, he talked with Cragun by telephone and told Cragun that "I did not want him to release those funds . . . unless . . . [the defendant in] whom I had confidence . . . took full responsibility to give me a clear bill of sale and make delivery possible for the machine." Cragun testified (a) that,

on the evening of the 29th, the defendant had "said he was
. . . discouraged and wanted . . . Forte to be able to use
some of the money to pay off the conditional sale contract";
and (b) that he (Cragun) told the defendant by telephone on
the 30th that he understood that the defendant "was will-
ing to assume personal responsibility on the deal as a condi-
tion of getting the money," that he (Cragun) would be al-
lowed to pay out the deposit money "without the clear title
they had been insisting upon if defendant would assume
personal responsibility," that he had "drawn up a receipt
for the down payment on the shovel for defendant to sign
as well as Forte, and had drawn a check to their joint order
and that it was at his office if defendant cared to sign the
receipt for the down payment." The defendant went to
Cragun's office where there was a "minimum of discussion
. . . consistent with the telephone conversation."[2] The
"[d]efendant read . . . the receipt . . . and signed both
his name and that of Forte by him as attorney." The re-
ceipt acknowledged delivery of a check on a Washington
bank "for . . . $15,000 as down payment on the purchase
by . . . [the plaintiff]" of the shovel. The defendant re-
ceived the check and asked Cragun "if he would introduce
him at the bank, that they wanted to cash" the check.
Cragun and the defendant walked to the bank, where Forte
joined them.

Cragun identified the defendant to a bank teller and "iden-
tified his signature." Both the defendant and Forte indorsed
the check. Cragun's testimony as to what happened was far
from definite and his recollection was admittedly vague,
but from his testimony, viewed as a whole, it could have
been found that the money was paid out on the counter by
the teller in $100 bills when both the defendant and Forte
were at the window. The defendant testified (a) that Forte

[2] As to this, the defendant testified that Cragun told him, "We are having
too much difficulty about lost . . . and stop payment checks, and I want
to make sure that the money is paid over to Forte. . . . If your name is on
the check . . . Forte will get the money and . . . the check won't be flying
around . . . like the other two checks." The trial judge was not bound to
believe the defendant's version of the talk and was warranted in finding
that Cragun's testimony was the more accurate.

took the money to a side room, counted it and said he was going to open an account in the bank with some of the money, and (b) that he (the defendant) "did not get any part of that money and has never received anything as a result of that transaction."

Thereafter there ensued various efforts to work out delivery of the shovel. The shovel never was loaded for shipment and it was learned that a bill of sale, dated January 8, 1948, of the same shovel from Forte to one Penoyer, had been recorded in Maryland. Neither the defendant nor Forte ever gave a clear bill of sale of the shovel to the plaintiff.

At the close of the arguments the defendant requested rulings (1) that there was no evidence that the defendant ever received any proceeds of the January 30 check, and (2) that in the absence of such evidence the judge must find for the defendant. Both of these requests were denied. The judge later permitted the defendant to file further requests set out in the margin[3] so far as granted or as exceptions to their denial are now pressed. In substance the judge ruled that there was evidence warranting a finding for the plaintiff, that the mere receipt of the check would support such a finding, that there was evidence that the defendant appropriated the check to his own use, and that to recover the plaintiff must prove such appropriation.

The judge's ultimate finding for the plaintiff must stand if there was evidence to warrant such a finding and if by his action on requests for rulings he correctly instructed himself as to the applicable law. Upon this record, he could find that the defendant was acting here as a broker or agent of Forte, the purported owner of the shovel; that the defendant may have represented himself as owner ini-

---

[3] "1. Upon the law and all the evidence the plaintiff is not entitled to recover. [Denied.] 2. Upon the law and all the evidence the court must find for the defendant. [Denied.] 3. The mere receipt of the check . . . by the defendant does not, on all the evidence, warrant a finding for the plaintiff. [Denied.] 4. There is no evidence in the case that the defendant wrongfully appropriated the check to his own use. [Denied.] 5. In order to sustain its cause of action, the plaintiff must prove that the defendant appropriated the check to his own use. [Granted.]"

tially; and that he had effected a contract between the plaintiff and Forte, who claimed to be the owner or, at least, to have an interest in the shovel sufficient to authorize him to sell it. The judge would also have been warranted in finding, or in inferring from facts which he could have found, (1) that there had been confusion with respect to two deposit checks given to Forte, including the purported loss and later cashing of the first check by Forte; (2) that there had been belated revelation or discovery of the outstanding conditional sale agreement; (3) that, following these events, Cragun, the plaintiff's lawyer, and Gill, its president, undertook to give Forte and the defendant a new deposit check without getting title to the shovel; (4) that this was done to enable Forte and the defendant to go through with the transaction; and (5) that the defendant in substance agreed to assume responsibility for supervising the proper application of the check to expedite and complete the transaction, from which the defendant expected to get a commission.

The check was payable to both the defendant *and* Forte. A receipt for the check was required in behalf of both of them. The indorsement of both of them was necessary to cash the check or otherwise to transfer it. See G. L. c. 107, § 64 (recently repealed by St. 1957, c. 765, § 2, and, under § 1, supplanted by G. L. c. 106, § 3–116); D. C. Code (1940 ed.) § 28–312. See also cases cited in annotations to § 41 in Beutel's Brannan, Negotiable Instruments Law (7th ed.) 631–634. Once the check was delivered to the defendant, the defendant had complete control of the check and could control the expenditure of its proceeds. Cragun's testimony would warrant the inference that the check in effect was impressed with a trust or fiduciary obligation requiring the defendant to see to its application to discharge liens and encumbrances on the shovel to the extent that there were any.

It is argued that receipt of the check without more under these circumstances does not warrant a finding that the defendant appropriated the check to his own use, and that without such a finding (as the judge ruled in granting the

fifth supplemental request; see footnote 2, *supra*) the plaintiff cannot recover. If Cragun's testimony be believed, the receipt of the check payable to the defendant and Forte jointly had been made a joint act upon which the defendant had assumed "personal responsibility." See *Neate* v. *Harding*, 6 Exch. 349, 351. He was not to be only a conduit of the check to Forte. Cf. *Burbank* v. *Farnham*, 220 Mass. 514, 519. The effect of this, in a matter in which the defendant had a financial stake at least for a commission, was to make any use of the check or its proceeds use by and for the benefit of the defendant, so far as the plaintiff was concerned. The transaction with respect to the shovel never was carried out and the consideration for the check failed. Neither the check uncashed nor $10,000 of its proceeds were restored to the plaintiff. The defendant cannot be heard, in the face of his receipt and of his indorsement of the check, to say that he did not receive the benefit of it and of its proceeds as contemplated by his explicit arrangement with Cragun. See *Atzinger* v. *Atzinger*, 325 Mich. 78, 84. A finding was warranted that the receipt and indorsement by the defendant of the check, later cashed, was for his benefit and upon his responsibility.

The arrangement by which the defendant assumed "responsibility" for the check distinguishes this case from what was said in *Henry W. Savage, Inc.* v. *Wheelock*, 230 Mass. 111, 113, and also from cases generally stating that an action for money had and received lies "to recover money which should not in justice be retained by the defendant." See e.g. *Rabinowitz* v. *People's Natl. Bank*, 235 Mass. 102, 103; *Cobb* v. *Library Bureau*, 268 Mass. 311, 316; *Sherman* v. *Werby*, 280 Mass. 157, 160–161; *Lipson* v. *Purtell*, 290 Mass. 171, 173; *Adams* v. *First Natl. Bank*, 321 Mass. 693, 694; *Flavin* v. *Morrissey*, 327 Mass. 217, 220; *Trafton* v. *Custeau*, 338 Mass. 305, 308. See also *Mayo* v. *Peterson*, 126 Mass. 516, 518; *Simmons* v. *Barns*, 263 Mass. 472, 475.

This case in various respects is analogous to *General Exch. Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 365, in which it was held that an assignee of an insurance claim could recover,

in an action for money had and received, the assigned amount from the assignor's attorney, who had notice of the assignment and to whom the insurance company had paid the amount of the claim, notwithstanding the fact that the attorney had paid the whole sum over to his client, the assignor. The court said in that case (p. 365), "The defendant [attorney] had complete control over the money. It was his duty to hold for the plaintiff [assignee] so much of the proceeds of the cause of action as represented the plaintiff's known interest in it." Here, under the arrangement with Cragun, the defendant had full control over the check. He could have seen that it was properly applied. He had assumed "responsibility" for it so that liens on the shovel could be discharged and the sale completed. If he permitted Forte to have the proceeds, he did it upon his own responsibility and at his own risk. See discussion in *Zytka* v. *Dmochowski*, 302 Mass. 63, 65–66.

Supplemental requests numbered 3 and 4 were thus properly denied. Request numbered 3, that the "mere receipt of the check . . . does not, on all the evidence, warrant a finding for the plaintiff," is ambiguous in form and it might reasonably have been regarded as not stating with clarity the circumstances upon which a ruling was requested. Even if we construe it as incorporating by reference all the circumstances appearing in evidence in their aspect most favorable to the plaintiff, the receipt of the check without accounting for $10,000 of the proceeds, in the light of the defendant's assumption of "responsibility" and the failure of consideration, would warrant a finding for the plaintiff. These same circumstances, especially the defendant's assumption of responsibility in a transaction from which he was to receive a benefit and upon a basis where he could have controlled the disposition of the proceeds, constituted evidence which would warrant a finding of wrongful appropriation (see supplemental request numbered 4) of the check by failing to perform his obligation to control its use.

The defendant contends that the check cannot be treated as the equivalent of cash and that the requests denied, and

perhaps the pleadings, should have dealt with the proceeds of the check rather than the check itself. Whatever may be the rule applicable to a check or other negotiable instrument in different circumstances, the check and its proceeds were here indistinguishable as a practical matter. The check was cashed the day it was drawn and was certainly in every substantial sense the equivalent of cash, sufficient to warrant an action for money had and received, upon proof of its receipt and the wrongful detention of it or its proceeds under the circumstances which could have been found to exist.

*Exceptions overruled.*