MacLeod-Mancuso, Bonnie H., J.
On September 7, 2005, Intervening Party, Brox Industries, Inc. (“Brox”), was granted leave to intervene in an action brought by the Plaintiffs, Aggregate Industries Northeast Region, Inc. f/k/a Bardon Trimount, Inc. and Middlesex Materials, Inc. (collectively “Al”), against the Defendants, Mass Paving, Inc. and William E. Belleville (collectively “Mass Paving”). Prior to Brox’s intervention, Al secured a preliminary injunction and a reach and apply attachment, preventing Reach and Apply Defendant United Parcel Service, Inc. (“UPS”) from paying Mass Paving money due on a contract. Brox now moves for Summary Judgment on its counterclaim against Al, seeking a declaratory judgment that Brox has a prior and, therefore, superior secured interest in the money owed Mass Paving under its contract with UPS. For the reasons stated herein, the Motion of Brox Industries, Inc. for Summary Judgment is ALLOWED.
BACKGROUND
On July 26, 2005, Mass Paving entered into a contract with UPS, requiring Mass Paving to perform construction work at one of UPS’s facilities (“UPS Project”). In exchange, UPS agreed to pay Mass Paving $75,125 upon completion of the UPS Project. Mass Paving sought to acquire building materials for the UPS Project from Brox. According to an affidavit signed by Joe Russo, Brox’s credit manager, “(w]hen Mass Paving requested to make a purchase on credit from Brox for the UPS job, I required that Mass Paving and UPS agree to an arrangement in which Brox could get direct payment from UPS.” Mass Paving already owed Brox approximately $20,000 for prior provisions of building materials. William Belleville, Mass Paving’s president, stated in an affidavit that Mass Paving verbally agreed to enter into the payment arrangement before the arrangement was confirmed in writing.
The arrangement was later formalized as a “Joint Check Agreement,” which substantively stated:
FOR VALUE RECEIVED, United Parcel Service (Maker) does hereby agree to pay jointly to BROX INDUSTRIES, INC., 1471 Methuen Street, Dracut, MA 01826 (“Brox”) and Mass Paving (“Buyer”) all monies due, or to become due and held in trust for Brox for materials, equipment, and/or services, including applicable state and federal taxes, used on or for the project known as Brickkill Road Job.
This agreement is made to secure certain indebtedness, liabilities and obligations of Buyer to Brox, whether due or to become due, now existing or hereafter arising per agreement between Buyer and Brox.
In the event the Buyer fails to endorse, is unable to endorse, or does not endorse subject joint checkfs) within three (3) weeks of the maker’s execution of the payment, the Maker will, upon verbal request from Brox, reissue payment in the name of Brox alone. Based upon the instructions of the Maker, upon Brox’s receipt of the reissued payment, Brox will return the initial payment to the Maker, or destroy it.
On August 3, 2005, UPS and Mass Paving signed the Joint Check Agreement. At that time, Brox had already started to supply materials to Mass Paving for the UPS Project. Brox continued to supply materials for the *478 UPS Project until August 12, 2005. Subsequently, Mass Paving completed the UPS project, thereby, triggering UPS’s obligation to pay under its contract with Mass Paving.
On November 10, 2003, AI received a judgment against Mass Paving for $183,499.05. On August 5, 2005, AI secured a preliminary injunction and a reach and apply attachment, preventing UPS from paying Mass Paving or any other party the funds due under UPS’s contract with Mass Paving. Brox, claiming it has a prior and superior right to these same funds, has intervened in this action, asking this Court to: (1) declare that Brox has a prior and superior right to the money held by UPS; (2) dissolve AI’s preliminary injunction and attachment; and (3) order UPS to pay Brox the money owed under UPS’s contract with Mass Paving.
DISCUSSION The Joint Check Agreement Does Not Lack Consideration
AI contends that the Joint Check Agreement fails due to a lack of consideration. As a general rule, “it is settled in this commonwealth that a promise to pay one for doing that which he was under a prior legal duty to do is not binding for want of a valid consideration.” Swartz v. Lieberman, 323 Mass. 109, 112 (1948), quoting Parrot v. Mexican Central Railway Co., 207 Mass. 184, 194 (1911). AI’s argument misrepresents the timing of the parties’ entry into the Joint Check Agreement.
The uncontroverted evidence indicates that Mass Paving verbally agreed to enter into the Joint Check Agreement before Brox agreed to supply materials to Mass Paving for the UPS Project. Joe Russo, in his affidavit, stated that “when Mass Paving requested to make a purchase on credit,” Brox required Mass Paving and UPS to enter into an arrangement, whereby Brox would be directly paid by UPS. William Belleville’s recollection that the parties had a verbal agreement before the arrangement was confirmed in writing is consistent with Joe Russo’s memory of the transaction. The evidence demonstrates that Brox insisted on an agreement to enter the Joint Check Agreement before it delivered any supplies related to the UPS project to Mass Paving. The consideration for the Joint Check Agreement, therefore, was Brox’s agreement to supply materials for the UPS Project.
Even if no verbal agreement was reached, the Joint Check Agreement does not lack consideration. Brox continued to supply materials after the Joint Check Agreement was signed. The only admissible evidence of any agreement between Mass Paving and Brox relates to the Joint Check Agreement. If no verbal agreement was formed, then Brox had no obligation to supply any materials to Mass Paving. Consequently, an agreement to provide additional materials after August 3, 2005 would constitute consideration for Brox’s entry into the Joint Check Agreement. Accordingly, the Joint Check Agreement does not want for consideration and is a valid contract.
The Joint Check Agreement Is an Assignment
Brox maintains that the Joint Check Agreement constituted an assignment. An assignment requires the assignor to divest itself of all right, interest, and control of the property assigned and any “retention of control precludes the perfection of an assignment.” In Re Computer Engineering Assoc., Inc. v. Desmond, 337 F.3d 38, 46 (1st Cir. 2003). If the terms of the Joint Check Agreement show an intention to transfer all interest in the money to Brox, then the agreement constitutes an assignment. Id. Significantly, no “specific or magic words” are required to form an assignment. Id.
Here, the terms of the Joint Check Agreement divested Mass Paving of any right, interest or control over the funds. According to the Joint Check Agreement, UPS must initially issue a check jointly in both Mass Paving’s and Brox’s name. Consequently, Mass Paving and Brox must each separately endorse the check before this check can be negotiated. G.L.c. 106, §3-110; Gill Equipment Co. v. Freedman, 339 Mass. 303, 308 (1959). If Brox chooses not to endorse the check, then after three weeks Brox may independently request that a second check be issued solely in its name. Brox can negotiate the reissued check without Mass Paving’s endorsement. Brox retains complete control over the funds at all times. Mass Paving’s only remaining power under the Joint Check Agreement is to delay payment to Brox by three weeks. The power to briefly delay payment does not constitute a retention of right, interest or control of the money. Further, the absence of the word “assignment” from the Joint Check Agreement does not negate the clear intent of the parties to wholly assign Mass Paving’s rights in the money to Brox. In Re Computer Engineering Assoc., Inc., 337 F.3d at 46.
Notably, the Joint Check Agreement is distinguishable from a mere promise to pay a debt out of a designated fund, which would not constitute an assignment. See id., citing Miller v. Wells Fargo Bank Int’l Corp, 540 F.2d 548, 558 (2d Cir. 1976), Malone v. Bolstein, 151 F.Sup. 544, 547 (N.D.N.Y. 1957). Mass Paving did not retain independent control over any of the funds held by UPS once Mass Paving entered into the Joint Check Agreement. At Brox’s discretion, the entire amount owed Mass Paving under its contract with UPS is to be paid directly to Brox without any input from Mass Paving. Accordingly, the Joint Check Agreement constitutes an assignment to Brox of Mass Paving’s rights to the proceeds of Mass Paving’s contract with UPS.
Brox Has a Prior and, Therefore, Superior Legal Right to the Proceeds of Mass Paving’s Contract with UPS
Since the Joint Check Agreement is an assignment, Brox has a superior right to the funds owed Mass *479 Paving under Mass Paving’s contract with UPS. AI could only reach and apply “in payment of a debt, any property, right, title or interest legal or equitable’’ of its debtor, Mass Paving. G.L.c. 214, §3(6). If a debtor has already assigned its rights to a third party’ then the reach and apply plaintiff, AI in this case, can not reach those rights. See Newton Housing Auth. v. Cumberland Contr. Co., 5 Mass.App.Ct. 1, 9 (1977) (denying creditor’s attempt to reach and apply a recovery by his debtor, which was subject to an attorney’s lien). Brox, as an intervening party claiming a prior interest in property in which AI holds an attachment, stands “in a position similar to that of an adverse claimant in trustee process.” National Radiator Co. v. Parad, 297 Mass. 314, 318 (1937). If an adverse claimant in trustee process can demonstrate a valid, prior assignment of property as security for a debt, then the adverse claimant’s rights to that property are superior to the rights of a party holding an attachment. G.L.c. 246, §34.
As noted above, Mass Paving assigned the rights to the proceeds of its contract with UPS to Brox no later than August 3, 2005. AI’s preliminary injunction was issued and its attachment secured on August 5, 2005. Consequently, when the preliminary injunction was issued and the attachment secured, Mass Paving had already made a valid assignment of its rights to the proceeds of its contract with UPS to Brox. Accordingly, Brox’s rights to the proceeds of Mass Paving’s contract with UPS are superior to AI’s rights.
ORDER
For the foregoing reasons, after careful consideration of the parties’ written submissions and oral arguments, the Motion of Brox Industries, Inc. for Summary Judgment is ALLOWED. This Court declares that: (1) Brox’s rights to the proceeds of Mass Paving’s contract with UPS are superior to ATs rights; (2) AI’s preliminary injunction and reach and apply attachment related to the proceeds of the contract between Mass Paving and UPS are hereby dissolved; and (3) UPS shall issue payment to Brox all money due under UPS’s contract with Mass Paving in accordance with the Joint Check Agreement.