### BALD KNOB STATE BANK v. BELLVILLE.

### Opinion delivered June 7, 1926.

1. BILLS AND NOTES—FORGERY OF INDORSEMENT.—Forgery of the payee's indorsement of a check carries no title.

2. PRINCIPAL AND AGENT—LIABILITY OF AGENT.—Where a contract provided that an agent to procure a loan on plaintiff's land was authorized to pay off an existing mortgage on the land and pay the balance to another agent, delivery to the latter of a check payable to plaintiff and the latter, *held* to be at the risk of the agent securing the loan.

3. PRINCIPAL AND AGENT—RIGHT OF AGENT TO COMMISSION.—Where an agent procured a loan for his principal, and delivered a check for the amount of the loan, payable to plaintiff and another agent, to the latter agent, instead of first paying off a mortgage which he was authorized to do before turning over the balance to the other agent, the fact that the other agent forged the plaintiff's indorsement to the check will not deprive the first agent of his right to his commission for procuring the loan, where he had no reason to suspect that the other would forge plaintiff's name to the check.

Appeal from White Chancery Court; *John E. Martineau*, Chancellor; affirmed.

STATEMENT BY THE COURT.

Clint Bellville and E. A. Bellville, his wife, brought this suit in equity against J. W. Halliburton, trustee, and

Fred and C. S. Perkins of Oswego, Kansas, to cancel a certain mortgage executed by them and delivered to the defendants on account of failure of consideration.

The defendants filed an answer and cross-complaint. They denied the allegations of the complaint, and in their cross-complaint asked for judgment against Eugene Moseley and the Bald Knob State Bank in the event of a recovery against them by the plaintiffs. The Bald Knob State Bank entered its appearance and filed an answer to the cross-complaint, denying all its material allegations.

J. A. Roetzel was allowed to intervene, and asked to be subrogated to all the rights of the plaintiffs. The various interests of these parties will appear in our statement of facts.

The record shows that Clint Bellville and E. A. Bellville signed a written application on the 21st day of November, 1922, for a loan on their farm of 280 acres in White County, Arkansas. The application recites that Eugene Moseley is appointed agent to procure for the applicants from the Fred Perkins Investment Company of Oswego, Kansas, a loan for $3,000, for the term of seven years at seven per cent. per annum.

On the 21st day of November, 1922, Clint Bellville and wife entered into a written contract with the Fred Perkins Investment Company to secure for them a loan of $3,000 for ten years at eight per cent. per annum, payable semi-annually at the office of Fred and C. S. Perkins of Oswego, Kansas, which was to be secured by a first mortgage on their farm of 280 acres of land in White County, Arkansas. There is a clause in the contract which authorizes the Fred Perkins Investment Company to pay off and discharge all existing liens on said lands out of the proceeds of the loan. The contract also contains a clause as follows:

"After deducting expenses and paying existing liens, my said agent is authorized to pay the balance of proceeds of this loan to Eugene Moseley of Judsonia, Arkansas, and the said Eugene Moseley is hereby authorized to receipt for same for me."

Pursuant to the terms of the contract, Clint Bellville and wife executed a deed of trust to said lands and delivered the same to the Fred Perkins Investment Company of Oswego, Kansas. J. W. Halliburton was designated as trustee in the deed of trust.

J. A. Roetzel had a mortgage on the lands in the sum of $3,600 at the time Clint Bellville applied for the loan in question. On the 26th day of June, 1923, J. A. Roetzel executed a deed of release in which he acknowledged full payment and satisfaction of his indebtedness, and released the lands in question from any lien. This instrument was duly acknowledged and filed for record on the 26th day of July, 1923, and delivered to the said Fred Perkins Investment Company.

Pursuant to the terms of his contract, Clint Bellville filed a suit in the chancery court for the purpose of clearing the title to said lands, and obtained a decree in the chancery court in June, 1923. The Fred Perkins Investment Company was duly notified of this fact, and it then sent to the Bald Knob State Bank in White County, Arkansas, a check which, together with the indorsements on it, reads as follows:

"OSWEGO STATE BANK

"Oswego, Kansas, August 8, 1923.
"Pay to the order of Eugene Moseley & Clint Bellville, $3,000, three thousand dollars, Bellville avails.

(Signed) "FRED PERKINS."
(Indorsed) "Eugene Moseley and Clint Bellville."

This check was duly collected by the Bald Knob State Bank, and a part of its proceeds was used in paying an overdraft of Eugene Moseley, and the rest of it was deposited to his credit in the bank and subsequently checked out by him. No part of the proceeds of said check was ever received by Clint Bellville or by J. A. Roetzel.

According to the testimony of Clint Bellville, he had been doing business with the Bald Knob State Bank for seventeen or eighteen years, and his signature was well known to the officials of the bank. He never

indorsed the check in question nor authorized Eugene Moseley or any one else to indorse it for him. His signature to the indorsement on the check is a forgery. Bellville made inquiries at the bank from time to time to ascertain why the money which he had borrowed had not come. The officials of the bank understood that he had executed a mortgage on his farm to secure a loan of $3,000, and that the money was to be sent to the bank for him by the Fred Perkins Investment Company.

E. R. Wynn, the cashier of the Bald Knob State Bank, was a witness for it. According to his testimony, Eugene Moseley handled quite a number of farm loans through the bank in the latter part of 1922 and 1923. The checks for these loans were deposited to his personal account. This was the way the Bellville check was handled. A part of the check was used in paying a debt of Moseley to the bank of about $1,300, and the balance was credited to his account. Wynn also admitted that the check was for a loan in favor of Clint Bellville, and that Bellville had been in the bank several times looking for it before the check came.

Other evidence will be stated or referred to in the opinion.

The chancellor found that J. A. Roetzel had not been paid the consideration for the deed of release executed by him whereby he released his mortgage lien on the land of Clint Bellville; that the defendants, Fred and C. S. Perkins, mailed the check for $3,000 payable to Clint Bellville and Eugene Moseley, to Eugene Moseley on August 8, 1923, and that said Eugene Moseley forged the indorsement of Clint Bellville to said check, and that the same was paid by the Bald Knob State Bank to Eugene Moseley on August 13, 1923, by depositing said sum of $3,000 to the individual account of said Moseley.

The court found that Clint Bellville should recover from the Bald Knob State Bank and from the defendants, Fred and C. S. Perkins, said amount of money, and that the intervener, J. A. Roetzel, should be subrogated to the rights of the plaintiffs in said judgment.

The court further found that the Bald Knob State Bank was primarily liable for the payment of said $3,000 and the accrued interest, and that, if Fred and C. S. Perkins should be required to pay any part of it, they would be entitled to recover it from the Bald Knob State Bank.

The chancellor also found that Fred and C. S. Perkins should recover from Clint Bellville the amount of commissions due them according to the terms of the contract for procuring the loan of the date of November 21, 1922.

A decree was duly entered of record in accordance with the findings of the chancellor. To reverse that decree, the Bald Knob State Bank and Fred and C. S. Perkins have duly prosecuted an appeal, and Clint Bellville has prosecuted a cross-appeal.

*Brundidge & Neelly,* for appellants.

*John E. Miller, Culbert L. Pearce* and *Avery M. Blount,* for appellee.

HART, J., (after stating the facts). The judgment against the Bald Knob State Bank was correct. The undisputed evidence shows that the signature of Clint Bellville to the check for $3,000 was forged, and that the Bald Knob State Bank collected said check and credited the account of Eugene Moseley with the amount thereof.

Under § 7789 of Crawford & Moses' Digest, when a signature to a check is forged, it is wholly inoperative, and no right to enforce payment thereof against any party thereto can be acquired under such signature, unless the party against whom it is sought to enforce such a right is precluded from setting up the forgery or want of authority. *Bank of Black Rock* v. *B. Johnson & Son Tie Co.,* 148 Ark. 11. See also *Bank of Hatfield* v. *Chatham,* 160 Ark. 530; and *Polk* v. *Garrison,* 162 Ark. 624, and cases cited. The reason is that forgery can carry no title to the paper, even in the hands of a *bona fide* holder.

This brings us to a consideration of what facts or circumstances will preclude the person whose signature

has been forged from setting up the forgery or want of authority. Certainly, there is no testimony in the case at bar which would prevent Bellville from setting up the fact that Moseley had no authority to indorse the check for him. Bellville testified that he made frequent trips to the bank to see if the check had arrived, and that the officials of the bank knew that the proceeds of the check were to be used in paying off a prior mortgage on his farm. The cashier of the bank expressly admits that he knew that Bellville was securing a loan through the Perkins Investment Company, of Oswego, Kansas, and giving a mortgage on his farm to secure the payment of the money for the express purpose of using the money obtained in paying off a prior mortgage on his farm. Bellville had been doing business with the bank for seventeen or eighteen years, and his signature was known to the cashier. Notwithstanding these facts, the cashier of the bank permitted Moseley to indorse the check in his own name and in the name of Clint Bellville and to credit the proceeds to his own account. A part of the proceeds was used in paying off an overdraft of Moseley to the bank, and he was allowed to check out the balance in due course of business.

Counsel for Fred and C. S. Perkins contend that the decree in favor of Clint Bellville should be reversed in so far as it adversely affects them. In making this contention, they rely upon the fact that Bellville, in his application for the loan, named Eugene Moseley as his agent to procure for him a loan of $3,000 from the Fred Perkins Investment Company, Oswego, Kansas, and that this carried with it at least the apparent authority for Moseley to indorse his name to the check for the loan. Conceding this to be true, the application is not the controlling factor in the case. Bellville made a written contract with the Fred Perkins Investment Company, of Oswego, Kansas, to procure the loan of $3,000 for him. It is true that it was made on the same day as the application, but, in the very nature of things, it was executed after the application had been signed, and its terms must

control the rights of the parties in the present controversy. The contract expressly provides that the Fred Perkins Investment Company is authorized to pay off and discharge all existing liens on said land out of the proceeds of the loan.

Another clause of the contract provides that, after deducting the expenses and paying existing liens, "my said agent is authorized to pay the balance of the proceeds of this loan to Eugene Moseley of Judsonia, Ark., and the said Eugene Moseley is hereby authorized to receipt for same for me." This shows that the words, "my agent," referred to the Fred Perkins Investment Company, and this clause expressly declares that Eugene Moseley is to receive the balance, after deducting expenses and paying the existing liens. The concluding part of the quoted clause shows the Eugene Moseley was not authorized to receipt for anything except the balance of the proceeds after deducting the expenses and paying the existing liens.

J. A. Roetzel, who had a prior mortgage on the land, had executed a deed of release with the expectation of receiving the proceeds of the loan, and all the parties knew that the money was being borrowed for the very purpose of paying off the prior mortgage held by Roetzel. Under these circumstances, the defendants, Fred and C. S. Perkins, who are the Perkins Investment Company, at their peril sent the check to Eugene Moseley and allowed him to cash the proceeds and apply them to his own use. It was their duty, under the contract, to see that the proceeds of the loan were applied to the discharge of the prior mortgage of Roetzel, and they had no authority to turn over any part of the proceeds to Moseley except what remained after deducting the expenses of the loan and paying off the lien of Roetzel.

On the cross-appeal but little need be said. On this branch of the case counsel for Bellville rely upon the well-known rule that, where the agent is guilty of fraud, dishonesty, or unfaithfulness in the transaction of his

agency, such action is a bar to recovery by him of compensation.

We do not think that the facts of this case show that Fred and C. S. Perkins were guilty of bad faith or gross misconduct in the premises. It is true that their contract with Bellville made it their duty to see that the prior liens on the land were paid off. They had, in good faith, secured the deed of release from Roetzel and had obtained a deed of trust from Clint Bellville and his wife to J. W. Halliburton as trustee. They then sold this deed of trust or mortgage to an Eastern client for the purpose of securing the money for Bellville. When Fred and C. S. Perkins received the money, they made the check payable to Eugene Moseley and Clint Bellville. This was done because Moseley was the local agent of Bellville, and there is nothing to show that they were not acting in perfect good faith in the matter. They had no suspicion whatever that Moseley would forge the name of Bellville to the check and thereby convert the proceeds to his own use.

On the other hand, their course of conduct in the matter shows that they intended for the money to be received jointly by Moseley and Bellville and to be applied in paying off the Roetzel mortgage. Under these circumstances, we do not think that they were guilty of such bad faith and fraudulent conduct as would require them to forfeit their right of compensation for their services.

The result of our views is that the decree was correct, and it will therefore be affirmed.