UNITED STATES of America,
Plaintiff,

v.

James WIMBLEY and Myrtle
Wimbley, Defendants.

No. 613.

United States District Court,
W. D. Arkansas, El Dorado Division.

Nov. 10, 1954.

Charles W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

Clifton Bond, Monticello, Ark., for defendants.

JOHN E. MILLER, District Judge.

On January 20, 1954, plaintiff filed its complaint against defendants seeking to recover the balance due on a promissory note allegedly executed by defendants and then in the hands of plaintiff, who had purchased the note from a holder in due course.

Defendants on March 4, 1954, filed their answer, admitting the execution of the note but alleging fraud on the part of the payee, S. L. Kay, d/b/a Arkansas Home Building & Repairing Company, in procuring the execution of the note. Defendants further alleged that Allied

Building Credits, Inc., to whom Kay negotiated the note, had either actual or constructive notice of the fraud and was not a holder in due course; that plaintiff had no better title than Allied and likewise was not a holder in due course.

Plaintiff on June 24, 1954, filed a request for admissions, attaching thereto the promissory note sued upon, together with the F.H.A. Title I Completion Certificate purportedly executed by defendants. On July 6, 1954, defendants replied to the request for admissions, admitting the execution of the note and completion certificate but alleging that they did not receive the full consideration therefor.

On July 20, 1954, plaintiff propounded certain interrogatories to defendants. On August 5, 1954, defendants, through their attorney, requested additional time in which to answer the interrogatories (because of the illness of the defendant, Myrtle Wimbley). This time was granted, and on August 23, 1954, defendants filed their answer to the interrogatories.

On September 20, 1954, defendants filed separate motions to amend their answer and their reply to plaintiff's request for admissions, and included therein the proposed amendments. The substance of the amendments was that defendants still admitted signing the completion certificate, but asserted that they did not execute or sign the note sued upon. On September 21, 1954, the Court entered separate orders permitting defendants to amend their answer and their reply to plaintiff's request for admissions.

Upon the issues thus joined, the case was tried to the Court, without a jury, on October 28, 1954, and at the conclusion of the trial the Court, having considered the pleadings, ore tenus testimony of witnesses, the deposition of Ed R. Livoni, exhibits, request for admissions and interrogatories together with responses thereto, and contentions of the attorneys for the respective parties, orally announced its findings of fact and conclusions of law, and in accordance therewith now makes and files herein its formal findings of fact and conclusions of law, separately stated.

### Findings of Fact.

**1.**

The plaintiff is the United States of America. The defendants are citizens and residents of the El Dorado Division of the Western District of Arkansas.

**2.**

In October, 1951, V. O. Nichols, a salesman working for S. L. Kay, d/b/a Arkansas Home Building & Repairing Company, went to defendants' home and persuaded them to have certain repairs made on the home. On October 29, 1951, a written contract was entered into between defendants and V. O. Nichols, purportedly acting as the agent of Crossett Paint & Roofing Company, the said contract providing that certain work should be performed on defendants' home for a consideration of $880.

**3.**

The plaintiff introduced in evidence the following documents which were purportedly signed by the defendants:

The promissory note sued upon; F.H.A. Title I Completion Certificate; F.H.A. Title I Credit Application; the written contract between defendants and the Crossett Paint & Roofing Company; and the F.H.A. Title I Cash Down Payment Certificate.

In addition plaintiff introduced handwriting specimens of both defendants made during the trial.

From a study of these exhibits it is clear to the Court that the defendants did not sign the note in question, and that the signatures thereon were forged by some other person or persons.

**4.**

On November 29, 1951, defendants paid a down payment of $88 to V. O. Nichols. On December 17, 1951, the

note (which was purportedly executed on November 24, 1951, with the first payment due January 7, 1952) was negotiated by Arkansas Home Building & Repairing Company, the payee thereon, to Allied Building Credits, Inc. Allied purchased the note for value, before maturity, and without notice of any defect in the payee's title.

Allied transmitted to defendants a "Note Coupon Book" and defendants began making monthly payments to Allied. On the inside flap of the coupon book it was stated that Allied had purchased defendants' note from Arkansas Home Building & Repairing Company, but the defendants did not understand this and actually thought they were making payments on the contract rather than upon a note. Defendants made one monthly payment of $25.55, and five monthly payments of $25.30, or a total of $152.05 in payments in addition to the down payment of $88.

5.

Some of the materials used in repairing defendants' home was purchased by Arkansas Home Building & Repairing Company from Southern Lumber Company. Materials of the value of $205.18 were not paid for by Arkansas Home Building & Repairing Company, and on May 14, 1952, Southern Lumber Company obtained a decree in the Chancery Court of Bradley County, Arkansas, which, inter alia, declared a lien on defendants' property in said amount of $205.18. In order to save their home defendants paid the judgment and extinguished the lien. Prior to paying the judgment, defendants had contacted Allied Building Credits, Inc., by telephone and asked if it would pay the money owed to Southern Lumber Company. Allied would not pay the same and defendants stopped making their monthly payments.

It also appeared from the evidence that some of the materials purchased from Southern Lumber Company and charged to defendants was not used on defendants' home, but in fact was used on other jobs in the area.

6.

After defendants ceased making monthly payments, Allied executed a Title I Claim for Loss on January 8, 1953, and plaintiff became the holder of the note upon payment to Allied of the sum of $681.09, which was the net unpaid principal.

7.

The note contains the following acceleration clause: "If any installment is not paid when due, the entire balance of this note shall become due and payable at the option of the holder."

Discussion.

The two primary questions of law presented to the Court in the instant case are (1) the effect of defendants' original admission that they signed the note in question, and (2) whether defendants, by making the monthly payments, waived the defense of forgery or are estopped to assert said defense.

The first question was answered by this Court in United States v. Lemons, D.C.Ark., 125 F.Supp. 686. In that case the Court at page 689 held that "sworn admissions are not absolutely and conclusively binding upon a party and do not estop the party from denying their truth. However, if a party desires to deny the truth of his admission or admissions, the burden rests upon him to explain the reason said admission was false and to establish that his subsequent testimony, in contradiction of the admission, is in fact the truth. The showing in this regard must be clear and convincing. Otherwise, the salutary purpose of the Rule might be circumvented."

The Court at page 689 of 125 F.Supp., suggested the following procedure to be followed in such cases:

"Ordinarily, the best practice—when it is learned that a party's admission is untrue—would be to request permission of the Court to execute amended or supplemental admissions in accordance with the actual truth. The motion should contain a statement of the reasons

for the change, and if the Court feels that justice would be served by permitting the amendment or substitution it should grant the party's request. If this procedure is followed, the opposing party will not be subject to surprise. On the other hand, if a party were to wait until the trial of a case before seeking to deny admissions he had made, it would require exceptional circumstances before the Court would be justified in permitting him to deny said admissions."

In the instant case defendants followed the proper procedure. As soon as it was learned that defendants were mistaken in their answer and their reply to plaintiff's request for admissions, they moved the Court for permission to amend said answer and reply. In the motion to amend the reply to plaintiff's request for admissions, defendants alleged:

■ "The grounds for this motion are that at the time of the preparation and signing of the original Reply to Request for Admissions the defendant, Myrtle Wimbley, was sick and partially confined to her bed and the original pleading was prepared by counsel after a telephone conversation with defendants, and signed by defendants without an adequate opportunity to examine the attached documents. That the true facts were discovered by counsel following additional interviews with the defendants, and this amendment is necessary in order that the Court properly consider the issues here involved."

On September 21, 1954, more than a month prior to the date of the trial, the Court granted defendants' motions to amend, since no prejudice would result to plaintiff and justice seemingly required the granting of the motion.

■ It is extremely doubtful whether defendants could accurately remember which of the documents they signed, and the Court gave little credence to their testimony in this regard. The Court's finding of fact that the signatures of defendants on the note were forged was based primarily upon a comparison of known signatures of defendants with the purported signatures on the note, although it is true that defendants' testimony corroborated the Court's finding of forgery.

The second question of law, i. e., whether defendants by making the monthly payments ratified the forgery or are estopped to assert said defense, apparently is one of first impression in Arkansas. However, there are Arkansas decisions on analogous phases of the question. Sec. 68–123, Ark.Stats.1947, Annotated, provides:

"When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

■ In the instant case the note is inoperative unless defendants are "precluded from setting up the forgery or want of authority." Generally speaking, this exception is asserted most frequently in cases where a bank has paid a check upon a forged endorsement and claims that the depositor is precluded from urging the forgery as a defense since the depositor was negligent in examining or failing to examine his cancelled checks and bank statements. See, Worthen Bank & Trust Co. v. Kelley-Nelson Construction Co., 219 Ark. 882, 245 S.W.2d 405; Bank of Black Rock v. Johnson & Son Tie Co., 148 Ark. 11, 229 S.W. 1. But the exception has also been urged in cases of forged signatures on notes. An excellent annotation on the subject appears in 150 A.L.R. 978–986. At page 979 of the annotation the general rule is stated as follows:

"The weight of authority is to the effect that under § 23 of the Negotiable Instruments Act (or its counterpart) there can be no ratification, at least not in the primary sense of that term, of a forged signature upon a negotiable instrument, in the absence of circumstances amounting to an estoppel in pais."

With regard to unauthorized signatures, however, in some jurisdictions a mere ratification will preclude the person from setting up the defense. 150 A.L.R. 985 et seq. But under the Arkansas law apparently a strong showing of ratification is required, even in the case of an unauthorized signature. In Johnson v. T. M. Dover Mercantile Co., 164 Ark. 371, 261 S.W. 913, L. H. Johnson, without authority, signed the names of J. C. Allen, G. H. Johnson and F. L. Johnson to a note. At page 378 of 164 Ark., at page 915 of 261 S.W. the Court said:

"In instruction numbered 1 the court told the jury that if the names of these three persons were signed to the note by L. H. Johnson without authority from them so to do they would not be bound on the note, unless the jury found from a preponderance of the evidence that after their names were so signed they consented thereto or ratified the same. It is urged that this instruction is abstract, as there was no testimony upon which the jury could have found that the signature had been ratified.

"It is answered that L. H. Johnson testified that he had, with authority signed the names of these gentlemen many times to negotiable paper, but that he had no authority to sign their names to the note here sued on. Allen was his brother-in-law, and the two Johnsons were his brothers, and when Allen was advised by Dover for the company that his name appeared on the note, he wrote the company that he would call to see about it, and all three of these gentlemen proposed to pay their pro rata parts of the note if they were discharged upon doing so but the company refused to accept such payment as a discharge of their liability.

"We think this testimony is insufficient to support a verdict that Allen or either of the Johnsons ratified the signing of their names. The letter from Allen was a mere inquiry and the proposition to pay a pro rata part was a mere offer of compromise, which did not amount to a ratification of their signatures."

The instant case is one of forgery, rather than one of unauthorized signature, and the Court is of the opinion that under the Arkansas law defendants are not precluded from asserting the defense of forgery unless, by their conduct, they have estopped themselves from urging said defense. The only action they took was that of making several payments to Allied Building Credits, Inc., under the assumption that they were making payments on the contract, and there was no evidence to indicate that Allied Building Credits, Inc., or anyone else, was misled by defendants' actions. In other words, there were no elements of estoppel present in the case.

And, as a matter of fact, even if ratification would preclude the defense of forgery, the Court is convinced that there was no ratification of the note by defendants. In Southark Trading Co. v. Pesses, 221 Ark. 612, 254 S.W.2d 954, the Court held that payments made on an indebtedness, after knowledge of fraud in the transaction, did not amount to a waiver by the party making the payments. At page 616 of 221 Ark., at page 956 of 254 S.W.2d the Court said:

"The rule appears to be well settled that in order to invoke the rule of waiver, as contended here, it is 'essential to show that the defrauded party intentionally condoned the

fraud, affirmed the contract, and abandoned all right to recover damages for the fraud, with full knowledge thereof. The affirmance must be equivalent to ratification. The question of outright waiver is one of intent; and it is essential to such waiver that the victim possess full knowledge of the fraud practiced upon him and that he intend to affirm the contract and abandon his right to recover damages for the loss resulting from the fraud.' 24 Am.Jur., § 209, page 34."

At the time of making the payments defendants in the instant case had no knowledge of the forgery, and they neither waived that defense nor ratified the note or signatures thereon.

Therefore, defendants are free to assert the defense of forgery, which is a valid defense against plaintiff, even though it has all the rights of Allied Building Credits, Inc., a holder in due course. Sec. 68–123, Ark.Stats., supra; Bald Knob State Bank v. Bellville, 171 Ark. 359, 284 S.W. 50.

### Conclusions of Law.

**1.**

The Court has jurisdiction of the parties to and the subject matter of this cause of action.

**2.**

The defendants, James Wimbley and Myrtle Wimbley, did not sign the note in question and are not bound thereon.

**3.**

The defendants did not ratify the note, or the signatures thereon, and are not estopped from asserting the defense of forgery.

**4.**

The plaintiff is entitled to recover nothing of and from the defendants, and the complaint of plaintiff should be dismissed.

A judgment in accordance with the above should be entered.