BEDNEGO F. WRIGHT, plaintiff in error, *vs.* JAMES M. WARE *et al.*, defendants in error.

1. A note payable to two creditors jointly, may be paid by paying either, and when paid to either, a mortgage to secure its payment is extinguished.
2. This principle is applicable to the case of two joint mortgagees to whom a mortgage is given, on its face to secure the payment of a note due one day after date, given them jointly by the mortgagor, though the consideration of said note was the fact that the two joint mortgagees had stood the security of the mortgagor for money borrowed from a third person, and the real object of the mortgage was to secure them from loss from such suretyship, no allegation being made of any mistake in the note or mortgage, or prayer for its rectification, and the mortgaged property having been sold to a purchaser who, though he knew of the mortgage, paid one of the joint mortgagees, with the consent of the mortgagor, the full value of the land, with the understanding that the mortgage was extinguished, and no allegation or proof of fraud being made against the purchaser. Strict law is with such purchaser, and his equity is superior to that of the other joint mortgagee, who might have fully protected himself by taking a several note and mortgage, and thus not have put it in the power of his joint creditor to extinguish the joint mortgage.

Promissory Notes. Contracts. Payment. Mortgage. Before Judge UNDERWOOD. Polk Superior Court. August Term, 1876.

Reported in the opinion.

E. N. BROYLES, for plaintiff in error.

WARREN AKIN & SON, for defendants.

JACKSON, Judge.

This was a bill filed by the plaintiff in error, Wright, to require Ware to make him titles to a certain tract of land, and to enjoin, perpetually, Ware and Lyon from enforcing a certain mortgage against said land.

The facts were substantially these: Rowe borrowed, in

1858, money from one Shorter, and Lyon and Ware were his securities. Rowe gave them his note for the sum of twenty-three hundred dollars, due one day after date, and secured this note by a mortgage on the said tract of land. The land was sold at sheriff's sale, subject to this mortgage. Ware bought it for $10.00, but no money was paid or deed made by the sheriff. In 1863, Rowe and Ware sold the land to Wright, the complainant, for $5,000.00, and Ware gave Wright his bond for titles. When it was bought by Wright, the understanding was that the mortgage was to be satisfied out of the money he paid Ware, one of the mortgagees in the *joint mortgage*. Afterwards Lyon and Ware foreclosed the mortgage and levied it upon the land, and this bill was brought by Wright to enjoin them from selling the land he had thus bought from one of them, Ware, and to compel Ware to carry out his bond and execute the title to him, Wright.

The jury found for Wright under the charge of the court, and the injunction was made perpetual, and Ware directed to make the title to Wright.

A motion was made for a new trial before Judge Underwood, Judge Buchanan having presided on the trial before the jury. Judge Underwood granted it, and this is the error complained of.

It will be seen at a glance, that so far as Ware is concerned, he ought not to be allowed to enforce this mortgage; for he sold the land and got the money. Lyon is the man, however, who complains that he was the co-surety of Ware, and that he got none of the money, and that the debt to Shorter is not wholly extinguished, and that he may yet have the balance of it to pay, and that he ought to be allowed to use the mortgage to save himself harmless—he having given his note and security to Shorter therefor, and it would take $800.00 or $1,000.00 to save him harmless.

The question, therefore, resolves itself into this: Does the payment of a mortgage debt to one of two mortgagees —the mortgage and note being joint—extinguish the mort-

gage, and prevent the other mortgagee from enforcing it to save him harmless from his suretyship, the real purpose of the mortgage being to secure the two securities as securities?

The general principle is that a payment to one of two joint creditors does extinguish the joint debt. 2 Chitty on Contracts, 1132, note D; 3 Johnson, 68; 15 Johnson, 478. This principle seems to be based upon the idea that such joint creditors are mutual agents of each other, in the nature of partners *pro hac vice*—mutual agents about that debt. Hence our own Code declares that payment to a "partner interested in the money, shall be good"—Code, §2864—after declaring that payment to an agent is good, in the same section. These two parties, Ware and Lyon, were both interested in this note and mortgage. The note was due one day after date. Rowe could have paid it at any time, and relieved his land. Wright did pay it to Ware, one of the payees, or joint creditors, of Rowe, for Rowe, and at his instance and request. Were these two men joint creditors of Rowe? We think so. It is true that they were sureties for him to Shorter; but to get them to be sureties, Rowe saw fit to make them a note due, and to secure it by mortgage. He, by that act, became their debtor. The consideration for his promise to pay this note to them, was the act of their going security for him; but we think that they were not bound to wait until they had paid the security debt before they could sue for and collect this note. They might have been willing to stand security on the express understanding that Rowe should give them the note due at once, so that they could protect themselves against loss by delays, on the part of their principal, to pay Shorter. At all events, they took from Rowe a note due to them jointly, and thereby they became his joint creditors, and he their common debtor.

It may be observed, too, that no mistake is set up in the answer, about this note or mortgage, and no prayer made for its rectification, that it be made to speak what the parties

meant.    On the contrary, they seemed to do just what they wished to do, though the purpose was to protect them in their joint suretyship.    Nor is any fraud alleged or proven against Ware and Rowe and Wright in their conduct towards Lyon.    All seemed to think that Shorter would take the money Ware got from Wright, and Rowe's debt to him would be thus paid, and the joint suretyship terminate satisfactorily to everybody.    There was some evidence, too, that Lyon was committed about the sale, but he said that he agreed to it only on condition that the suretyship should be at an end.

We conclude, on the whole, that strict legal principle applied to the facts developed here, makes Lyon responsible for what Ware did about this joint business, and when we consider the equities between the parties here, certainly Wright, who bought fairly and paid fully for this land, stands as high or higher than Lyon.    It is true that he knew of this mortgage; but he bought expressly on condition that it be paid off, and he paid Ware, the joint creditor with Lyon, the money to pay Shorter.    If, by Shorter's refusal to take the Confederate currency, or otherwise, the Shorter debt was not paid, who ought to bear the loss, Wright, the purchaser, who dealt with Rowe in possession of the land, and Ware, one of the joint owners of the note and mortgage, or the other joint owner, Lyon, who could easily have protected himself by paying the debt and holding the mortgage, or by making the note and mortgage several and not joint? We think that the stronger and better equity, under the facts is with the purchaser, Wright.    At any rate, equity follows the law in any doubtful matter, and the law is with Wright, as we think, in this case.    There can be no doubt that when this note was paid—the note given by Rowe to Lyon and Ware—the mortgage was also extinguished.    27 *Ga.* 347—350.

Though Ware did not have perfect title—no deed having been made to him—yet he was obliged to make the best title he could, and the decree to make him do so was right.

Rowe could not object, and did not, and does not, object, though a party when the decree was made.   49 *Ga.* 622.

The case is rather a close one, but the foregoing is the best view we are able to take of it.   We concur with Judge Buchanan, who tried the case, and differ with Judge Underwood, who granted the new trial, and as the legal principles control the case, we reverse the judgment granting the new trial, and direct that the verdict stand, and that the court decree accordingly.   Of course, we decide nothing as to the right of Lyon to go upon his principal, Rowe, or upon his co-surety, for contribution, if he shall lose by having to pay Shorter.   All we decide is, that the note given by Rowe to the two is paid, and by its payment the mortgage is extinguished.

Judgment reversed.