MARY DEWEY *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

Hampden.   January 18, 1926. — June 2, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Bills and Notes,* Payment to one of two joint payees. *Payment.*

An insurance company, which had issued a policy of industrial insurance upon the life of a woman, payable in case of her death to a blood relative, upon such death delivered to an undertaker, with the authority of the insured's daughter, a check payable to the order of the undertaker and the daughter "in full of all claims and demands" under the policy. The undertaker indorsed the check with his own name and without authority added a signature of the daughter, and the check was cashed. The daughter brought an action against the insurance company upon the check. *Held,* that

(1) G. L. c. 107, § 64, had no application;

(2) Contractual rights against the defendant, which were created by the delivery of the check to the authorized agent of the plaintiff, were extinguished on the delivery of the check to the bank, which cashed it without notice of any limitation on the right of the undertaker to receive its proceeds;

(3) A verdict for the defendant was required as a matter of law.

CONTRACT. Writ dated September 23, 1915.

In the Superior Court, the action was tried before *Irwin*, J. Material evidence is stated in the opinion. A verdict was entered for the defendant by order of the judge, who thereupon reported the action to this court for determination.

The case was submitted on briefs.

*T. D. O'Brien & P. O'Brien*, for the plaintiff.

*J. B. Ely, W. C. Giles, & W. A. McDonough*, for the defendant.

PIERCE, J. This is an action of contract upon a check drawn by the defendant upon the Metropolitan Bank of New York, dated November 24, 1914, payable to the order of John F. Ryan and Mary Dewey, for the sum of $768.98 "in full of all claims and demands under" two industrial insurance policies on the life of Ellen Dewey, the mother of the plaintiff. At the close of the testimony, on the motion of the defendant, the trial judge directed a verdict for the defendant, and, subject to the plaintiff's exception, the jury returned a verdict for the defendant. " . . . it was thereupon agreed by the parties that . . . [the judge] should report the case to the Supreme Judicial Court and that if that court should be of opinion that the direction of a verdict for the defendant was wrong, the verdict should be set aside and judgment entered for the plaintiff for the sum of $593.98, with interest thereon at six per cent per annum from September 23, 1915, and costs, and if that court should be of opinion that the direction of a verdict for the defendant was right, there should be judgment on the verdict."

The pertinent facts in support of the plaintiff's case are as follows: In 1892, and again in 1894, the plaintiff took out a policy of industrial insurance on the life of Ellen Dewey, her mother, in the defendant company, "with no named beneficiary but payable to a blood relative or other lawful beneficiary." The policies contained the provision that "the policies and all premium receipt books must be surrendered before payment claimed." From the several dates when the policies issued until the insured died, in November, 1914, all premiums were paid to the defendant's agent by the plaintiff directly or through one Timothy Ryan or his

son John F. Ryan.   There was an arrangement between the Ryans and the plaintiff whereby the Ryans held the policies for safe keeping, paying the defendant company the premiums regularly each week and the plaintiff reimbursing the Ryans for all expenditures made in her behalf.   John F. Ryan officiated as undertaker at the funeral of Ellen Dewey, and the plaintiff made an oral agreement to pay him the sum of $175 for the expense of the funeral upon the receipt by the plaintiff of the defendant's check for the amount due on the policies.   At the same time the plaintiff authorized Ryan "to instruct the defendant company, through its local office, to make out its check to the plaintiff and said John F. Ryan jointly," and the said John F. Ryan was to call at the defendant's Holyoke office to get the check when it should come and bring it to her at her home so that the two payees could go together to a bank and cash it, and out of the proceeds Ryan was to get the said sum of $175 and the plaintiff the balance.   "It was agreed that the said check was issued in payment of claims under the above mentioned policies and that the plaintiff authorized the making of the check to herself and Ryan jointly, and its delivery to Ryan."   It further appeared in evidence that Ryan received the check about the time of its date and cashed it at the Union Trust Company in Springfield, Massachusetts, on March 23, 1915; that when deposited it bore on its back the name of John F. Ryan as indorser, and the name of Mary Dewey, by mark, as indorser.   The genuineness of the signature of the name of Mary Dewey by mark was denied by the plaintiff, and the jury found that she did not indorse the check.

A check is a bill of exchange drawn on a bank.   G. L. c. 107, § 208.   As such it is a negotiable instrument.   G. L. c. 107, § 23.   The rule deducible from the cases is that, if payment of a bill is made at maturity, in full, by the acceptor or other party liable, to a person having a legal title in himself and having the custody and possession of the bill ready to surrender, and the party paying has no notice of any defect of title or authority to receive, the payment will be good.   ". . . faith is given to the holder, mainly on the ground of his possession of the bill, ready to be surrendered

or delivered, and the actual surrender and delivery of it upon the payment or transfer." Shaw, C.J. in *Wheeler* v. *Guild*, 20 Pick. 545, at page 553.

It is a general principle that one of several joint obligees may discharge an entire claim by the receipt of payment of such claim, *Allen* v. *South Penn Oil Co.* 72 W. Va. 155, *Pierson* v. *Hooker*, 3 John, 68, 70, and that payment of a bill or note payable to two or more persons jointly may be made to either of them and the debt be thereby extinguished. *Park* v. *Parker*, 216 Mass. 405. *Bruce* v. *Bonney*, 12 Gray, 107, 111. *Wright* v. *Ware*, 58 Ga. 150, 152.

The provisions of G. L. c. 107, § 64, that "Where an instrument is payable to the order of two or more payees or endorsees who are not partners, all must endorse, unless the one endorsing has authority to endorse for the others" is but a statement of the common law as it was understood in this Commonwealth before the passage of the negotiable instrument law, St. 1898, c. 533, § 41, *Smith* v. *Whiting*, 9 Mass. 334, and has no application to the effect of a payment to one of several joint obligees or payees.

It follows that, by the payment to Ryan, by the bank, of the full amount called for by the check, it was discharged and cancelled; and that the contractual rights against the insurance company, which were created by the delivery of the check to the authorized agent of the plaintiff, were extinguished on the delivery of the check to the bank, when it cashed it without notice of any limitation on the right of Ryan to receive the proceeds of it.

The direction of a verdict for the defendant was right, and judgment is to be entered on the verdict, in accordance with the agreement of parties.

*Judgment for defendant.*