[Civ. No. 31946.   Second Dist., Div. Five.   Aug. 9, 1967.]

HARRY H. WHITE LUMBER CO., INC., Plaintiff and Appellant, v. CROCKER-CITIZENS NATIONAL BANK, Defendant and Respondent.

Samuel & Lucas and Charles E. Samuel for Plaintiff and Appellant.

Cosgrove, Cramer, Rindge & Barnum and A. M. Traugh for Defendant and Respondent.

McCOY, J. pro tem.*—This is an appeal by plaintiff from a judgment of the Municipal Court of the Long Beach Judicial

---

*Assigned by the Chairman of the Judicial Council.

District dismissing its action. The judgment was entered following an order sustaining defendant's demurrer to the first amended complaint without leave to amend. The Appellate Department of the Superior Court for Los Angeles County reversed the judgment with directions and, on its own motion certified to this court, pursuant to rule 63, California Rules of Court, that a transfer appears necessary to settle an important question of law. We transferred the case for that purpose.

The question of law to be settled is: Does a joint payee of a check have a cause of action against a collecting bank which pays a check payable to joint payee signing his own name and forging that of the other joint payee? The appellate department answered this question in the affirmative for the reasons set forth in the opinion prepared by that court by Judge Aiso, in which Judge Meyers concurred.

We believe that the decision of the appellate department is correct for the reasons stated in Judge Aiso's opinion, and now adopt that opinion as the opinion of this court. It reads as follows:

"The question posed by this appeal is: Does a joint payee of a check having a cause of action against a collecting bank[1] which has paid a check made payable to joint payees bearing an indorsement effected by one joint payee signing his own name and forging that of his joint payee? We hold 'yes' under both the Negotiable Instruments Law (former sections of the Civil Code, now repealed but applicable to this case) and the California Commercial Code—Commercial Paper provisions.

"The facts alleged by plaintiff in his first amended complaint in essence are: Plaintiff is a materialman, which sold lumber products to defendant Timberline Roofing Company[2] for use on a construction project owned and built by Air-Tare (a joint venture group, not a party to this action). To insure that the subcontractor defendant Timberline Roofing Company would pay plaintiff for its material furnished, Air-Tare drew four checks here involved on the First Western Bank and Trust Company (not a party herein), each made payable

---

[1] "California Commercial Code, section 4105, subdivision (d): ' "Collecting bank" means any bank handling the item for collection except the payor bank;' and under California Commercial Code, section 4105, subdivision (b): ' "Payor bank" means a bank by which an item is payable as drawn or accepted.'

[2] "Joint payee Timberline Roofing Company is joined as a defendant as it will not agree to be a coplaintiff. (Code Civ. Proc., § 382.)

to the order of the subcontractor Timberline Roofing Company AND plaintiff Harry H. White Lumber Co., Inc., and delivered said checks to the joint payee Timberline Roofing Company, Timberline indorsed its name and then forged plaintiff's indorsement on each of those checks, presented them to and received payment thereon from defendant Crocker-Citizens National Bank, a collecting bank.

"The four checks with respective dates of issue and of amounts are as follows: 1. December 10, 1964, $2,133.34 2. December 17, 1964, $746.66 3. December 24, 1964, $960 4. January 15, 1965, $1,920.

"Plaintiff avers an interest in the four checks in the amount of $2,472, representing the unpaid balance due and payable to it for lumber products sold to the joint payee, defendant Timberline Roofing Company, and that it has been damaged in that amount by the collecting bank's actions with reference to those four checks.

"The Uniform Commercial Code superseded the Civil Code sections embodying the Negotiable Instruments Law, as of January 1, 1965. The first three checks are governed, therefore, by provisions of the Negotiable Instruments Law, and the last check by the Uniform Commercial Code.

"GROUNDS ON WHICH DEMURRER WAS SUSTAINED

"Plaintiff's first amended complaint was in two counts: count one: in essence set forth the facts outlined above, and count two: was a common count for money had and received.

"The defendant collecting bank (Crocker-Citizens National Bank) interposed demurrers, general and special, to the complaint and to each count separately.

"The minute order sustaining the general demurrer reads: 'On March 8, 1967, court orders Demurrer sustained without leave to amend; on grounds: Obligations of defendant, if any, have been discharged.'

"The trial court apparently accepted the demurring defendant's theory that the cases of *Cober* v. *Connolly* (1942) 20 Cal.2d 741 [128 P.2d 519, 142 A.L.R. 367], and *Dewey* v. *Metropolitan Life Ins. Co.* (1926) 256 Mass. 281 [152 N.E. 82], and Civil Code, sections 3200, subdivision (4) and 1475[3]

---

[3]"Civil Code, section 1475: 'An obligation in favor of several persons is extinguished by performance rendered to any of them, except in the case of a deposit made by owners in common, or in joint ownership, which is regulated by the title on deposit.'

"Civil Code, section 3200: 'A negotiable instrument is discharged— (4) By any other act which will discharge a simple contract for the payment of money; . . .' "

governed. ■■ ■■ ■■ ■■ In so doing, the trial court misconstrued the applicability of the California authorities mentioned to the facts[4] and circumstances of this case. The *Dewey* case is not binding upon us and, in this instance, not persuasive.

''CHECKS GOVERNED BY NEGOTIABLE INSTRUMENTS LAW

''The *Cober* case, *supra*, was a suit between the maker of a note and a joint payee who had received no benefit from a performance in kind which one of his other joint payees had received in lieu of money from the maker. No question of negotiation[5] of the instrument was there involved. ■■ Here, the collecting bank was not a party to the sale of lumber products to the subcontractor, joint payee Timberline Roofing Company. The defendant bank's rights, if any, came only through negotiation of the checks. Hence, it is our view that the statutory provisions here applicable are Civil Code, sections 3122 and 3104, rather than sections 3200, subdivision (4), and 1475.

''Section 3122 (U.N.I.A., § 41) provided: 'Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others.'

''Section 3104 provided: 'When a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority.'

---

[4] ''In testing the validity of a general demurrer, the allegations of the pleading to which the demurrer is directed are accepted as true. (*Carruth* v. *Fritch* (1950) 36 Cal.2d 426, 429-430 [224 P.2d 702, 24 A.L.R.2d 1403]; *Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 41-42 [172 P.2d 867]; *Dept. of Water & Power* v. *Inyo Chem. Co.* (1940) 16 Cal.2d 744, 746 [108 P.2d 410].)

[5] ''Former Civil Code, section 3111: 'An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery.'

''California Commercial Code, section 3202: '(1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.'

''See also: 78 Banking Law Journal 185 at 186 (Mar. 1961) as to what constitutes negotiation.

"Although no mention is made of these code sections in the opinion, it has been held where a negotiation apparently took place that the underlying obligation (for which the joint payee check was given in payment) was not discharged by payments on an indorsement effected by one of two joint payees without authority of the other. (*Helgeson* v. *Farmers Ins. Exchange* (App. Dept., Superior Court, San Francisco, 1953) 116 Cal.App.2d Supp. 925 [255 P.2d 484].)

"There appears to be no California case specifically construing Civil Code, section 3122, in the light of Civil Code, section 3104. However, the overwhelming weight of authority in the other jurisdictions holds the collecting bank liable to a joint payee whose signature has been forged, where the collecting bank has paid a negotiable instrument made payable to the order of joint payees and presented to it without compliance with section 41 of the Uniform Negotiable Instruments Act (Civ. Code, § 3122). (*Kaufman* v. *State Savings Bank* (1908) 151 Mich. 65 [114 N.W. 863, 864] ; *Crahe* v. *Mercantile Trust & Sav. Bank* (1920) 295 Ill. 375 [129 N.E. 120, 12 A.L.R. 92] ; *Hoffman* v. *First Nat. Bank of Chicago* (1939) 299 Ill.App. 290 [20 N.E.2d 121] ; *Ocala Nat. Farm Loan Ass'n* v. *Munroe & Chambliss Nat. Bank* (1925) 89 Fla. 242 [103 So. 609, 610-611] ; *Bald Knob State Bank* v. *Bellville* (1926) 171 Ark. 359 [284 S.W. 50] ; *First Nat. Bank of Garden City* v. *Daniel* (1933) 137 Kan. 423 [20 P.2d 488] ; Cf. *Schoolfield* v. *Barnes* (1934) 18 Tenn.App. 333 [77 S.W.2d 66, 68-69] ; *First Nat. Bank* v. *North Jersey Trust Co.* (1940) (dictum) 18 N.J.Misc. 449 [14 A.2d 765, 768] ; and see: 11 Am.Jur.2d, Bills & Notes, § 321, pp. 344-345.)

"Drawers likewise have been allowed recovery against their drawee (payor) banks for deductions from their deposits of amounts paid out on joint payee checks indorsed by only one joint payee and with the indorsement of the other joint payee forged. (*Virginia-Carolina Joint Stock Land Bank.* v. *First & Citizens' Nat. Bank* (1929) 197 N.C. 526 [150 S.E. 34, 37] ; *Midland Sav. & Loan Co.* v. *Tradesmen's Nat. Bank* (10th Cir. 1932) 57 F.2d 686, 693-694; *Wormhoudt Lumber Co.* v. *Union Bank & Trust Co.* (1942) 231 Iowa 928 [2 N.W.2d 267, 270] ; *Fulton Nat. Bank of Atlanta* v. *Didschuneit* (1955) 92 Ga.App. 527 [88 S.E.2d 853].) The theory of these cases is that the indorsement was defective and hence passed no title in the checks to the indorsee or subsequent holders. The *Wormhoudt Lumber Co.* and *Fulton National Bank* cases, *supra,*

arose out of building construction circumstances similar to this case.

"If *Dewey* v. *Metropolitan Life Ins. Co.* (1926) *supra,* 256 Mass. 281 [152 N.E. 82], be construed as holding directly contrary to the two groups of cases cited above, it does not impress us as persuasive. It has been severely criticized as erroneous. (See: Beutel's Brannan on Negotiable Instruments (7th ed., 1948) at p. 633; 1 Stan. L. Rev. 730, 733, fn. 16 (1949).) Furthermore, it is doubtful whether it would be followed in Massachusetts today. (Cf. *Gill Equipment Co.* v. *Freedman* (1959) *infra,* 339 Mass. 303 [158 N.E.2d 863, 866].)

█ Where there is a choice in the area of commercial law we prefer adoption of the line of cases which comports with the purpose, intent, and custom of the mercantile and financial circles in making checks payable to joint payees. The cardinal purpose for so doing is to prevent either payee from transferring the instrument or receiving money on it without the concurrence of the other. (See: 8 N.C.L. Rev. 46, 48 (1929); 1 Stan. L. Rev., *supra,* 730, 737-739 (1949).)

"Heretofore, the California courts have held that where a single payee's indorsement has been forged, the payee may recover against a collecting bank upon the theory of conversion or quasi-contractual liability. (1 Witkin, Summary of Cal. Law (1963) Negotiable Instruments, § 87, pp. 640-641 and cases there cited; *Morgan* v. *Morgan* (1963) (dictum) 220 Cal.App.2d 665, 677-678 [34 Cal.Rptr. 82]; and see Note 100 A.L.R.2d 670, 673.)

█ "We, therefore, hold that the plaintiff has stated a cause of action against the defendant collecting bank, Crocker-Citizens National Bank, sufficient to withstand a general demurrer with reference to the checks governed by the pertinent provisions of the Negotiable Instruments Law (Civ. Code, §§ 3122 and 3104).

"CHECKS GOVERNED BY COMMERCIAL CODE

█ "As to the check issued after January 1, 1965, when the Commercial Code was in force, the plaintiff's position is even stronger.

"The relevant portion of the Commercial Code, section 3116 provides: 'An instrument payable to the order of two or more persons . . . (b) If not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.' It has been commented with reference to this portion of section 3116, 'The effect of subd. (2) in California

is probably to resolve a doubt arising from *Cober* v. *Connolly* (1942) 20 Cal.2d 741 [128 P.2d 519, 142 A.L.R. 367]. (See 1 Stan. L. Rev. 730-736.)' (Cal. Comments to Uniform Com. Code, § 3116, Deering's California Codes, p. 350.) By the express provisions of section 3116, subdivision (b), all the joint payees must join not only for negotiation, but also for discharge as well.

"In *Gill Equipment Co.* v. *Freedman* (1959) *supra,* 339 Mass. 303 [158 N.E.2d 863, 866], the same court that rendered the judgment in *Dewey* v. *Metropolitan Life Ins. Co.* (1926) *supra,* 256 Mass. 281 [152 N.E. 82], in affirming a judgment holding a negotiating joint payee liable to the drawer in an action for money had and received even though he personally had not received any of the proceeds of the check, which was given as a down payment on a diesel 50-ton shovel never delivered, stated as follows: 'The check was payable to both the defendant *and* Forte. A receipt for the check was required in behalf of both of them. The indorsement of both of them was necessary to cash the check or otherwise to transfer it. See G.L. c. 107, § 64 (recently repealed by St. 1957, c. 765, § 2, and, under § 1, supplanted by G.L. c. 106, § 3-116) ; D.C.Code (1940 ed.) § 28-312. See also cases cited in annotations to § 41 in Beutel's Brannan, Negotiable Instruments Law (7th Ed.) 631-634.'

"Other pertinent sections of the Commercial Code are: section 3404: '(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value. (2) Any unauthorized signature may be ratified for all purposes of this division. Such ratification does not of itself affect any rights of the person ratifying against the actual signer.' Section 1201, subdivision (43): ' "Unauthorized" signature or indorsement means one made without actual, implied or apparent authority and includes a forgery.' Section 3306: 'Unless he has the rights of a holder in due course any person takes the instrument subject to . . . (d) The defense that he or a person through whom he holds the instrument acquired it by theft, . . .' Section 3419: '(1) An instrument is converted when . . . (c) It is paid on a forged indorsement.'

"The comments under sections 3404 and 3419 indicate that

section 3419 changes the preexisting California law and now gives the payee of a forged check a cause of action for conversion against the drawee (payor) bank. But no change is indicated as to the preexisting California case law permitting the payee to recover from a collecting bank which has paid out on a forged indorsement. (See: *Stone & Webster Engineering Corp.* v. *First Nat. Bank & Trust Co.* (1962) Sup. Jud. Ct. of Mass. 345 Mass. 1 [184 N.E.2d 358, 362, 99 A.L.R.2d 628].)

"Thus, the plaintiff has a cause of action against the defendant collecting bank on the check governed by the provisions of the Uniform Commercial Code. ▮ The demurrers here were both general and special. The order of the trial court sustaining the demurrers reflects a ruling on the basis of the general demurrers only; hence, the case must be returned to the trial court for consideration of the special demurrers. (*Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 425-426 [282 P.2d 890] ; *Buss* v. *J. O. Martin Co.* (1966) 241 Cal.App. 2d 123, 136 [50 Cal.Rptr. 206] ; *Lewis Ave. Parent Teachers' Assn.* v. *Hussey* (1967) 250 Cal.App.2d 232, 237 [58 Cal. Rptr. 499].)''

For the reasons stated in the foregoing opinion, the judgment is reversed with directions to the trial court to overrule the general demurrers and to rule on the points raised by the special demurrers.

Appellant to recover its costs on appeal.

Kaus, P. J., and Hufstedler, J., concurred.