MARK K. TERRY vs. KEMPER INSURANCE COMPANY.

Suffolk.   October 4, 1983. — November 16, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & O'CONNOR, JJ.

*Negotiable Instruments,* Forgery, Joint payees.  *Uniform Commercial Code,* Payment on negotiable instrument.  *Agency,* Indorsement of negotiable instrument.

When an insurer issued a check in the amount of a claim to the claimant's attorney, who was authorized to receive it, and the attorney cashed the check, the insurer was relieved from liability to the claimant, even though the attorney had forged the claimant's endorsement on the check and had retained the proceeds after cashing it. [452-453, 455]

Enactment of G. L. c. 106, §§ 3-116 and 3-404, did not change the common law rule that if an agent who is authorized to receive a check payable to the principal forges the principal's endorsement to the check and receives payment from the drawee bank, the maker of the check is relieved of liability to the principal. [453-454]

CIVIL ACTION commenced in the Municipal Court of the City of Boston on December 14, 1977.

The case was heard by *Grabau, J.*

*Mark Lichtenstein* for the plaintiff.

*Frank A. Smith, III,* for the defendant.

HENNESSEY, C.J.  The plaintiff, Mark K. Terry, appeals pursuant to G. L. c. 231, § 109, from a decision of the Appellate Division of the Municipal Court of the City of Boston.  Terry filed an action in the Municipal Court against the defendant, Kemper Insurance Company (Kemper), for recovery of $2,000, plus costs and attorney's fees, allegedly due from Kemper as personal injury protection (PIP) benefits under G. L. c. 90, § 34M.  The trial judge found for the defendant, Kemper.  Terry claimed a report to the Appellate Division of the Municipal Court, which found no error and ordered that the appeal be dismissed.  We affirm the order of the Appellate Division.

The case was submitted on a statement of agreed facts which we summarize. Kemper issued an automobile insurance policy to Boston Pet Supply, Inc. (Boston Pet), for PIP benefits, pursuant to G. L. c. 90, § 34M.[1] On March 10, 1977, while the policy was in full force, Terry was lawfully operating the insured vehicle with Boston Pet's consent when another vehicle collided with the one he was driving. As a result of this collision, Terry sustained personal injuries.

On or about April 22, 1977, Terry engaged Mr. Albert F. Cioffi, then an attorney, to represent him in making a claim against the defendant pursuant to the PIP provisions of G. L. c. 90, § 34M, and Boston Pet's insurance policy. Mr. Cioffi submitted an application to Kemper for benefits. Kemper considered the application and issued to Mr. Cioffi on May 23, 1977, within the required statutory period, a draft for $2,000 payable to Terry and Mr. Cioffi. Upon receipt of this draft, Mr. Cioffi indorsed both his name and Terry's, without notifying Terry that he had received the draft. Mr. Cioffi received and retained all proceeds of the draft. Terry did not learn that Kemper had mailed Mr. Cioffi the draft until many months after it had been wrongfully indorsed and transferred. Terry has never received any proceeds from the draft. In March, 1978, Mr. Cioffi was indicted on charges of larceny and other crimes. He

---

[1] General Laws c. 90, § 34M, as amended through St. 1972, c. 319, provides in pertinent part: "Personal injury protection benefits and benefits due from an insurer assigned shall be due and payable as loss accrues, upon receipt of reasonable proof of the fact and amount of expenses and loss incurred provided that upon notification of disability from a licensed physician, the insurer shall commence medical payments within ten days or give written notice of its intent not to make such payments, specifying reasons for said nonpayment, but an insurer may agree to a lump sum discharging all future liability for such benefits on its own behalf and on behalf of the insured. In any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment of amounts therein determined to be due in accordance with the provisions of this chapter."

pleaded guilty to some of the charges and was sentenced to prison. He was subsequently disbarred as an attorney by this court.

The focus of Terry's appeal is the term "payment" appearing in G. L. c. 90, § 34M. In pertinent part, G. L. c. 90, § 34M, provides: "In any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for *payment* and shall therefore have a right to commence an action in contract for *payment* of amounts therein determined to be due . . ." (emphasis added). Terry asserts that no payment within the meaning of the statute occurred when Kemper transferred to Mr. Cioffi a $2,000 draft, payable jointly to Terry and Mr. Cioffi. Terry maintains this position even though he admits that at the time of transfer "Mr. Cioffi had actual authority to make the claim on behalf of the plaintiff to the defendant and to receive the draft." According to Terry, no payment occurred as Mr. Cioffi had no authority to forge Terry's indorsement on the draft and, therefore, payment of the draft did not discharge Kemper's obligation to pay Terry's PIP benefits. To reach this result, Terry relies on provisions of the Uniform Commercial Code, G. L. c. 106, inserted by St. 1957, c. 765, § 1 (U.C.C.). Kemper argues that agency principles govern the controversy and that its transfer of a draft, for which the drawee has sufficient funds, to an agent authorized to receive it relieves its liability to the principal on the underlying obligation. Such a transfer, Kemper contends, is payment within the meaning of G. L. c. 90, § 34M, notwithstanding any contrary conclusion which provisions of the U.C.C. might suggest.

In *Dewey* v. *Metropolitan Life Ins. Co.*, 256 Mass. 281 (1926), we addressed a situation similar to the one now before us. There, the claimant under two insurance policies authorized a creditor to act as an agent to receive a check issued in satisfaction of the claims and payable jointly to the claimant and her agent. *Id.* at 283. Upon receipt of the check, the agent signed his name, forged the claimant's

signature, and cashed it. The claimant sought recovery from the drawer insurance company for the value of the check's proceeds wrongfully appropriated by her agent. We held there that when the bank paid to the claimant's agent the full value of the check without notice of any impropriety, albeit on a forged indorsement, the drawer's liability to the claimant was discharged. Although *Dewey* was decided while the former negotiable instruments law, G. L. c. 107, § 64 (see St. 1898, c. 533, § 41),[2] was in effect, we considered the situation in that case as governed by common law principles. Cf. *Saulenas* v. *Penn*, 287 Mass. 409, 411-412 (1934).

Other courts have reached the same result, settling such controversies under common law agency principles. See *Navrides* v. *Zurich Ins. Co.*, 5 Cal. 3d 698, 708-713 (1971); *Hutzler* v. *Hertz Corp.*, 39 N.Y.2d 209, 214 (1976) (common law applied although U.C.C. in effect); *Clarkson* v. *Selected Risks Ins. Co.*, 170 N.J. Super. 373, 382 (1979) (reaching same result on similar facts where U.C.C. is in force). See generally Murray, Joint Payee Checks — Forged and Missing Indorsements, 78 Com. L.J. 393, 398-400 (1973).

We now must determine whether enactment of the U.C.C. in Massachusetts by St. 1957, c. 765, § 1, requires us to depart from our reasoning in *Dewey, supra,* and rule that the common law principles of agency are inapplicable to the situation before us. We conclude that it does not.

Terry directs our attention to G. L. c. 106, § 3-116 and § 3-404. General Laws c. 106, § 3-116, provides: "An instrument payable to the order of two or more persons . . . (b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them." General Laws c. 106, § 3-404, provides: "(1) Any unauthorized signature is wholly inoperative as that of the person

---

[2] General Laws c. 107, § 64, provided: "Where an instrument is payable to the order of two or more payees or endorsees who are not partners, all must endorse, unless the one endorsing has authority to endorse for the others."

whose name is signed . . . ." Terry asserts that these provisions lead to the conclusion that Mr. Cioffi's forged indorsement of Terry's signature on the Kemper draft was ineffective and therefore could not lead to a proper negotiation, G. L. c. 106, § 3-202, and subsequent discharge of Kemper's underlying obligation, G. L. c. 106, § 3-603.

We need not address the merit of this argument as we find that enactment of the U.C.C. in Massachusetts does not necessarily require us to ignore well-settled principles of agency law. General Laws c. 106, § 1-103, provides: "Unless displaced by the particular provisions of this chapter, the principles of law and equity, including . . . the law relative to . . . principal and agent . . . shall supplement its provisions." See *National Shawmut Bank* v. *Vera,* 352 Mass. 11, 16 (1967). We find nothing in G. L. c. 106, § 3-116 and § 3-404, which specifically requires abandonment of common law agency principles in connection with the facts of this case. The majority common law agency rule applicable to the facts before us is expressed in Restatement (Second) of Agency § 178(2) (1958), which provides as follows: "If an agent who is authorized to receive a check payable to the principal as conditional payment forges the principal's endorsement to such a check, the maker is relieved of liability to the principal if the drawee bank pays the check and charges the amount to the maker."[3] See *Hutzler* v. *Hertz Corp., supra* at 216 n.2; *Navrides* v. *Zurich Ins. Co., supra* at 711; *Clarkson* v. *Selected Risks Ins. Co., supra* at 379. Cf. J. Reitman & others, 6 Banking Law c. 124, § 124.04 (1981).

---

[3] Comment (c) to § 178 (2) provides: "If a debtor, having an account at a solvent bank sufficient to pay a check, gives to an authorized agent a check payable to the principal in accordance with business customs as conditional payment, he has performed his obligation, and any loss caused by delay because of the conduct of the agent is at the creditor's risk. Thus, if the drawee bank cashes the check after a forgery and embezzlement by the agent and charges the amount to the debtor, the latter is relieved of his debt. The creditor then would be subrogated to the right of the debtor against the bank. If, in the meantime, the bank becomes insolvent, it is the creditor and not the debtor who loses."

Our reasoning in *Dewey, supra,* is consistent with this majority trend. Accordingly, we conclude that Kemper discharged its obligation to Terry when it transferred a draft in the amount of the claim to Mr. Cioffi, Terry's agent who was authorized to receive it, which was payable jointly to Mr. Cioffi and Terry and drawn on an account with sufficient funds to cover the draft at a solvent bank.[4] See *Taylor* v. *Wilson,* 11 Met. 44, 51 (1846).

*Order dismissing report affirmed.*

---

[4] It appears that perhaps Terry need not be the loser in this transaction, because the parties in oral argument before this court expressed the belief that Terry could recover against the collecting bank, and Terry's counsel stated that a seasonable action against that bank has been commenced.