GENERAL MOTORS ACCEPTANCE CORPORATION *vs.*
ABINGTON CASUALTY INSURANCE COMPANY.

Middlesex. October 5, 1992. - November 3, 1992.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Negotiable Instruments*, Joint payee, Payment, Indorsement. *Uniform Commercial Code*, Payment on negotiable instrument.

Where a drawee bank made payment of a check on the endorsement of one of two copayees without the endorsement of the other, the payment did not discharge the drawer of its liability to the other copayee on the instrument or the underlying obligation. [585-588]

CIVIL ACTION commenced in the Woburn Division of the District Court Department on April 13, 1990.

The case was heard by *Lawrence F. Feloney*, J., on a motion to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael E. Hager* for the plaintiff.

*Eric S. Goldman* for the defendant.

NOLAN, J. On April 13, 1990, General Motors Acceptance Corporation (GMAC) filed a complaint against Abington Casualty Insurance Company (Abington), alleging breach of contract and conversion. In response, Abington moved to dismiss the complaint for failure to state a claim on which relief can be granted. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). After a hearing, the trial judge granted Abington's motion to dismiss, and reported his decision to the Appellate Division of the District Courts which dismissed the report. GMAC filed a timely claim of appeal on July 18, 1991. We transferred the case to this court on our own motion. We conclude that GMAC has presented a claim on which relief

can be granted, and, therefore, we reverse the order of the Appellate Division dismissing the report.

This court will affirm the dismissal of a complaint pursuant to rule 12 (b) (6), only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). The plaintiff's claim must be based on facts set forth in the complaint; all materials outside the pleadings are excluded from this review. Mass. R. Civ. P. 12 (b). The allegations in the complaint will be treated as true, and the plaintiff is entitled to all favorable inferences as well. *Nader*, *supra* at 98, and cases cited.

In its complaint, GMAC alleges the following facts. Abington issued a physical damage insurance policy covering a 1984 Jeep motor vehicle to Robert A. Azevedo. GMAC, the holder of a security interest in the vehicle, was the loss payee beneficiary of that policy. In 1988 the vehicle sustained damage. Abington appraised the loss and issued a check on November 14, 1988, payable jointly "to the order of Robert A. Azevedo and G.M.A.C." The check was delivered to Azevedo who then presented it to the drawee bank without GMAC's endorsement. The check was drawn on an account with sufficient funds, and Azevedo received full payment. To date, GMAC has received none of the proceeds issued by Abington.

GMAC now seeks recovery of the insurance proceeds from neither the drawee bank, which mistakenly accepted the check without the necessary endorsements, nor Azevedo, who is subject to GMAC's lien, but instead from Abington, the drawer of the check. GMAC claims that in these circumstances, the payment on a check to only one of two joint payees[1] does not discharge the underlying obligation of the payor

---

[1]The drafters of the Uniform Commercial Code declined to use the phrase "joint payee" because of the possible implication of a right of survivorship. G. L. c. 106, § 3-110 (1) (*d*) uniform laws comment 1 at 560 (Law. Co-op. 1984). An instrument payable to "A and B" is intended to be payable to the two parties as tenants in common, absent express lan-

to the remaining payee. This claim presents two novel issues to this court: (1) whether the delivery of a negotiable instrument to one joint payee operates as delivery to all joint payees, and (2) whether a drawer's underlying obligation to joint payees, who are not in an agency relationship, is discharged when one joint payee cashes a check without the endorsement of the other.

Although the issue has never been addressed in Massachusetts, other States have held that the delivery of a negotiable instrument to one joint payee constitutes delivery to all joint payees. *United States Fidelity & Guar. Co.* v. *Peoples Nat'l Bank*, 24 Ill. App. 2d 188 (1960). *Vaughn* v. *Vaughn*, 238 Miss. 342, 350 (1960). *Spaulding* v. *First Nat'l Bank*, 210 A.D. 216, aff'd, 239 N.Y. 586 (1924). *House-Evans Co.* v. *Mattoon Transfer & Storage Co.*, 275 P.2d 268, 272 (Okla. 1954). The Uniform Commercial Code (U.C.C.), G. L. c. 106 (1990 ed.), expressly provides for instruments payable to two or more persons, see G. L. c. 106, § 3-116, and when, as in this case, the instrument is payable not in the alternative, it may be negotiated, discharged, or enforced only by consent of all the payees. § 3-116 (*b*). To obtain the rights of a holder who may discharge or demand payment of the instrument pursuant to § 3-301, one must take the instrument by negotiation. § 3-202. Negotiation of an instrument payable to order entails delivery of the instrument with all the necessary endorsements. § 3-202 (1). Thus, since under Massachusetts law a person must seek the endorsements of every payee to negotiate, transfer, or discharge a negotiable instrument, delivery of the instrument to one payee does not jeopardize the rights of other payees. We hold, therefore, that Abington's delivery of the check to only one joint payee, Azevedo, nevertheless constitutes delivery to the remaining joint payee, GMAC.

Obligations on a negotiable instrument, however, do not end with delivery to a payee. To discharge its liability, a

guage to the contrary. *Id.* Any reference to "joint payees" in this opinion assumes tenancy in common.

party to an instrument must make payment or satisfaction to the holder. § 3-603. Once payment discharges the instrument, the underlying obligation is also discharged. § 3-802 (1) (*b*). When a check is involved, final payment is made when it is accepted by the drawee bank. §§ 3-410, 3-418. If a check is dishonored, then the drawer becomes obligated to pay the amount of the check, § 3-413, or satisfy the underlying obligation, § 3-802 (1) (*b*).[2]

In this case, the drawee bank accepted the check, and payment was made to a payee. Ordinarily, an underlying debt is discharged when the check is " 'drawn on an account with sufficient funds to cover [it] at a solvent bank' and is delivered to the payee." *First Nat'l Ins. Co.* v. *Commonwealth*, 391 Mass. 321, 326-327 (1984), quoting *Terry* v. *Kemper Ins. Co.*, 390 Mass. 450, 455 (1983). Even delivery of a check to the payee's authorized agent who then cashes it, discharges the drawer's liability. See *Terry, supra*. However, in this case, where there are copayees who are not in an agency relationship, a negotiable instrument cannot be discharged by the actions of only one payee.[3] Section 3-116 (*b*) expressly prohibits the discharge of an instrument except by *all* the payees. "[T]he rights of one [payee] are not discharged without his consent by the act of the other." Uniform laws comment to G. L. c. 106, § 3-116 at 581 (Law. Co-op. 1984). Without this rule, there would be no assurance that all the joint payees would receive payment and that the drawer's underlying obligation would be fully discharged.[4]

---

[2]Contract liability on a check falls primarily on the drawee and only secondarily on the drawer because the check is taken as conditional payment of the underlying obligation. See § 3-802. The drawer's primary contractual liability is revived only when the check is dishonored. § 3-413.

[3]The defendant's reliance on *Dewey* v. *Metropolitan Life Ins. Co.*, 256 Mass. 281 (1926), is misplaced. *Dewey* concerns contract principles which were in force before the U.C.C. was enacted. Section 3-116 creates a specific exception to the common law rule regarding the power of joint obligees to discharge a debt individually.

[4]"If one of the several joint payees can receive payment without authority from the others, there is no assurance that the consideration necessary to extinguish the underlying liability of the drawer will reach the other

Prior to the adoption of § 3-116, the common law rule that any joint obligee has power to discharge the promisor by receipt of the promised performance, Restatement of Contracts § 130 (a) (1932), had created particular incongruities when applied to negotiable instruments. See Murray, Joint Payee Checks — Forged and Missing Indorsements, 78 Com. L.J. 393, 399 (1973). The unpaid copayee could not collect from the *drawer* because the instrument was deemed discharged; on the other hand, the unpaid copayee could sue the *drawee* on a conversion of funds theory. *Id.* Section 3-116 settles the issue by requiring the endorsements of every joint payee before an instrument can be discharged. Cf. *Gill Equip. Co.* v. *Freedman,* 339 Mass. 303, 308 (1959) (signatures of all joint obligees required for negotiating instrument). The Restatement of Contracts (Second) expressly recognizes this exception to the common law rule.[5]

Prohibiting the discharge of a check without all the necessary endorsements also accords with § 3-603, which discharges a party's liability on an instrument only if payment or satisfaction is made to a holder. Lacking GMAC's endorsement, Azevedo could not have taken the check by negotiation and thereby become a holder. § 3-202. Without payment to a holder, the liabilities of the parties to the check are

---

payees. On the other hand, if payment must be made to all or with the authority of all, there is an obvious tendency to force the payees together, to encourage compromise of their conflicting claims, and to put them on notice in such fashion as to permit them to protect their own interests. The latter rule tends to insure the discharge of the underlying obligation of the drawer to all parties and to protect the interest of the various payees in the proceeds — the two primary purposes prompting the use of joint-payee instruments." Note, Discharge of Joint-Payees Instruments, 1 Stan. L. Rev. 730, 738 (1949).

[5]Restatement (Second) of Contracts § 299 (1981), reads: "*Except where the promise is made in a negotiable instrument* and except as stated in § 300, any joint obligee, unless limited by agreement, has power to discharge the promisor by receipt of the promised performance or by release or otherwise, and tender to one joint obligee is equivalent to a tender to all" (emphasis added). Furthermore, comment b states, "§ 3-116 creates an exception to the rule of this Section, providing that the instrument can be discharged only by all the co-obligees." *Id.* at 434.

not discharged. § 3-603. This holding also comports with § 3-419 (*c*), which provides that payment over a forged endorsement results in liability for conversion rather than acceptance and discharge. Further, to hold that an instrument is discharged when payment is made to one copayee without the endorsement of the other would effectively convert a "payable to A *and* B" instrument into one "payable to A *or* B." Thus, to protect the rights of all joint payees as well as the integrity of the commercial paper itself, we hold that payment of a check to one copayee without the endorsement of the other copayee does not discharge the drawer of either his liability on the instrument or the underlying obligation.

Because Abington's obligation to GMAC as a joint payee is not discharged, GMAC has two legal claims against Abington.[6] First, as a loss payee beneficiary, GMAC may sue on the underlying contract claim. See, e.g., *Denver Elec. & Neon Serv. Corp.* v. *Gerald H. Phipps, Inc.*, 143 Colo. 530, 538 (1960) (unpaid, nonendorsing copayee may sue drawer on underlying debt when check is paid to forging copayee); *Ford Motor Credit Co.* v. *United Servs. Auto. Ass'n*, 11 U.C.C. Rep. Serv. (Callaghan) 361, 362 (N.Y. Civ. Ct. 1972) (summary judgment awarded to loss payee lienholder). Second, as the owner of a lost instrument, GMAC may assert a claim under § 3-804. A suit under § 3-804 in this case is not blocked by payment to the holder pursuant to § 3-603 because, as stated above, Azevedo was never a holder of the check. GMAC does not have a conversion claim against the drawer under § 3-419 (*c*) because Abington never paid on the missing endorsement.[7]

---

[6]The issue whether either of these claims is barred by the relevant statute of limitations is not before this court.

[7]Where cases involve "payable through" drafts, some courts have held that a nonendorsing, unpaid, joint payee has a valid claim against the drawer under § 3-419. See, e.g., *Great Am. Ins. Cos.* v. *American State Bank*, 385 N.W.2d 460, 464 (N.D. 1986). Section 3-120 provides that instruments "payable through" a bank do not authorize the bank to pay the instrument. The "payable through" bank is merely a collecting bank; only the drawer can authorize payment. § 3-120 comment. Therefore, because

The court recognizes, regretfully, that this decision could foster circuitous litigation. If GMAC prevails, then Abington will be forced to bring a conversion suit against the drawee bank for payment of the check on a missing endorsement.[8] See, e.g., *Middle States Leasing Corp.* v. *Manufacturers Hanover Trust Co.*, 62 A.D.2d 273, 279 (N.Y. 1978) (drawee bank liable to drawer for payment of check without copayee's endorsement). Ideally, GMAC should have sought payment directly from the drawee bank as the true owner of the instrument under § 3-419 (1) (*c*) or as a lienholder against Azevedo under § 9-105 (1) (*c*), § 9-306 (1) and (2). The loss, ultimately, must fall on the drawee bank who was in the best position to prevent the error.

For these reasons, we reverse the order of the Appellate Division dismissing the report and remand the case to the District Court.

*So ordered.*

---

the drawer in these cases also acts as the drawee, the drawer can be held liable for conversion under § 3-419 (1) (*c*).

[8]A missing endorsement is equivalent to a forged endorsement for the purposes of a § 3-419 conversion suit. E.g., *Federal Deposit Ins. Corp.* v. *Marine Nat'l Bank*, 431 F.2d 341, 344 (5th Cir. 1970); *Peoples Nat'l Bank* v. *American Fidelity Fire Ins. Co.*, 39 Md. App. 614, 618-619 (1978); *Humberto Decorators, Inc.* v. *Plaza Nat'l Bank*, 180 N.J. Super. 170, 173 (1981).