A.C.E., INC. *v.* INLAND MORTGAGE COMPANY and
West Star Financial Corporation

97-907                                      969 S.W.2d 176

Supreme Court of Arkansas
Opinion delivered May 14, 1998

*Griffin Smith*, for appellant.

*Wilson & Associates, P.A.*, by: *Randall S. Bueter*, for appellee.

Tom Glaze, Justice. This case involves the interpretation of statutory provisions under the Uniform Commercial Code. Because the application of these Code provisions is in issue, we first address the facts that led to this litigation and appeal.

Bilal Badar owned a house in Little Rock, Arkansas, mortgaged to West Star, and the mortgage was serviced by Inland Mortgage Corporation (Inland). The house was damaged by fire, and afterwards, A.C.E., Inc. (ACE), performed the repairs. Inland supervised the repairs and distributed the insurance proceeds required for their payment.

Inland issued its last insurance check in the amount of $3,800.00 on July 11, 1996, payable to Badar and ACE as joint payees, and ACE received the check on July 15, 1996. On that

July 15 date, ACE's agent, Sandi Ganus, handed the check to Badar and asked him to indorse it, since the proceeds were owed to ACE for repairs. Badar, however, put the check in his pocket, and refused to return it to Ganus. ACE had not yet indorsed the check.

Ganus has claimed throughout this litigation that she called Inland on the morning of July 16, 1996, and told Inland's agent, Laure Eck, what Badar had done. Ganus says she recommended that Inland stop payment of the check. The record reflects that the check was paid by the payor bank — First Commercial Bank — on July 18, 1996, and the back of the check reflects "A.C.E., Inc." and a signature difficult to decipher, but which appears to be Badar's. John Giuffre, an Inland supervisor in the company's hazard insurance section, averred Inland's records showed that ACE contacted it concerning the check on July 19, 1996, but by that time, the check had already been cashed.

On August 21, 1996, ACE filed suit against Inland and Badar, and alleged the following: (1) ACE had immediately (on July 15 or 16, 1996) requested Inland to stop payment on the check and Inland refused to comply; (2) Inland refused ACE's demand for payment; and (3) Inland's and Badar's actions constituted a conversion of the check. Alternatively, ACE asserts it had no agency relationship with Badar, so Inland's delivering the check to ACE as joint payee, and the bank's cashing the check bearing ACE's forged indorsement, did not discharge the underlying debt to ACE.

On October 30, 1996, ACE moved for summary judgment on the basis that the forged indorsement did not discharge the underlying obligation. In its argument, ACE relied solely on the holding in a Massachusetts case, *General Motors Acceptance Corporation v. Abington Casualty Insurance Co.*, 413 Mass. 583, 602 N.E.2d 1085 (1992) (hereafter *GMAC*).

On March 26, 1997, the trial court denied ACE's motion for summary judgment, and in doing so, cited Ark. Code Ann. § 4-3-414(c) (Repl. 1991), which provides that, once a draft is accepted by a bank, the drawer (here Inland) of the instrument is discharged. The trial court held the decision in *GMAC* did not

apply because of a factual difference, namely, in *GMAC*, the drawer sent the check directly to the wrongdoer co-payee instead of giving it to GMAC, the co-payee lienholder. Here, Inland, as drawer, delivered the check first to ACE, which in turn gave the check to Badar. The trial court further held ACE was not entitled to summary judgment because a fact issue exists (1) as to whether Inland had unreasonably delayed in stopping the check after ACE made the request, and (2) because Badar was a necessary party, who had not as yet been served with the complaint and summons.

On January 2, 1997, Inland filed a motion to dismiss under ARCP Rule 12(b)(6), alleging ACE's complaint failed to state a claim. The trial court granted Inland's motion on April 29, 1997, by an amended order dated June 11, 1997.[1] ACE appeals from the amended dismissal order on the following bases: (1) the trial court overlooked its conversion allegation based on its claim that Inland failed to timely stop payment on the check; (2) § 4-3-414(c) is inapplicable because the provision refers to a "draft," but this case involves a check; (3) Badar was not a necessary party under ARCP Rule 19; and (4) the *GMAC* case is applicable and the rule there states that the payment of a check to one co-payee without the indorsement of the other co-payee does not discharge the drawer of either his liability on the instrument or the underlying obligation.

Inland cites the *GMAC* holding, but does so for the proposition that an unpaid co-payee cannot collect from the drawer because, under § 4-3-414(c), the instrument payable to the co-payees is deemed discharged once it is negotiated by any party. Inland argues that, when this type of situation occurs, ACE's remedy, if any, is against the drawer's bank. Inland further argues that, when a check is issued for an underlying obligation, that obligation is suspended until the check is presented for payment. Under

---

[1] The trial court erroneously entered its first dismissal order without notice to ACE, but on motion by ACE to correct the original order, the trial court obliged by entering an amended order which deleted earlier language that the dismissal order was granted after a hearing. The amended order now provides, "Before the court is the motion to dismiss of defendants. Upon a review of the pleadings and other matters before the court, this court doth find and order that the defendants' motion should be and hereby is granted." The trial court refused ACE's request for additional findings.

the Code, "presentment" means a demand made by or on behalf of a person entitled to enforce the instrument, Ark. Code Ann. § 4-3-501 (Repl. 1991), and under this definition, Inland contends that a forger is unable to "present" a check because he is not a person entitled to enforce it. Inland submits that, because Badar forged the check, no presentment occurred, and the payee (ACE) was unable to sue on the suspended obligation.

We hold that Inland's obligation under the check was discharged at the time of payment. We find the decision in *Mills v. Hurley Hdw. & Furn. Co.*, 129 Ark. 350, 196 S.W.2d 121 (1917), helpful. There, appellant T. R. Mills lived in Little Rock, and was the owner of Batesville White Lime Company in Batesville, Arkansas. A. B. Gowens was Mills's superintendent at the plant. Gowens was authorized to receive and fill orders, and to receive checks in payment, but was not authorized to cash checks; instead, checks were to be turned over to Mills. Appellee Hurley Hardware & Furniture Company purchased goods through Gowens and sent its check to Gowens for payment. Gowens forged Mills's indorsement on the check, cashed it at the First National Bank at Batesville, and appropriated the proceeds. This court held that, because the check was sent and received by the proper party, that ended Hurley's responsibility and constituted payment by Hurley the moment the check was cashed. *Id.* at 353.

The early common-law rule in *Mills* is found at UCC § 3-414(c), codified in Arkansas at § 4-3-414(c), which provides that, if a draft is accepted by a bank, the drawer is discharged regardless of when or by whom acceptance was obtained. Under Ark. Code Ann. § 4-3-104(3)(f), "check" means, in part, a draft, other than a documentary draft, payable on demand and drawn on a bank. Hence, Inland's obligation on the check ended when Badar demanded payment of the check from the First Commercial Bank, and the bank paid it.

While ACE relies on *GMAC* in making its argument that Inland had not discharged its obligation, that case is factually and significantly distinguishable. There, Abington Casualty Insurance Company had insured Robert A. Azevedo's car, which had sustained damages. Abington appraised the loss and issued a check

payable jointly to the owner and insured, Azevedo, and the lienholder, GMAC. Abington mailed the check directly to Azevedo, who forged GMAC's indorsement and took the funds.

■ GMAC sued Abington under UCC § 3-116(b) [codified in Arkansas at Ark. Code Ann. § 4-3-110(d) (Repl. 1991)], which requires that, if an instrument is payable to joint payees, it may be negotiated, discharged, or enforced only by all of them. The Massachusetts court held that liability on the instrument or underlying obligation did not discharge the drawer, Abington, because GMAC had not indorsed the check. The court in *GMAC* conceded that, ordinarily, under UCC's 3-802(1)(b) [here, Ark. Code Ann. § 4-3-414(c)], payment of a check discharges the obligation. However, the decision in *GMAC* hinged on UCC § 3-116(b) [Ark. Code Ann. § 4-3-110(d)], which expressly prohibits the discharge of an instrument except by all payees. The legal analysis in *GMAC* ends there, because GMAC never had possession of the check nor the opportunity to indorse it.

■ Here, unlike GMAC, ACE originally possessed the check, but delivered it to Badar. Under Ark. Code Ann. § 4-3-309(a) (Repl. 1991), a person not in possession of an instrument is entitled to enforce an instrument if: (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process. Since the loss in this case occurred as a result of a transfer by ACE, ACE cannot enforce the instrument under § 4-3-309(a). Accordingly, under § 4-3-414(c), Inland's underlying obligation on the debt was discharged when payment was made on the check.

Lastly, ACE argues that the court's dismissal was improper because it did not dispose of ACE's claim against Inland for conversion based upon Inland's alleged failure to act timely in stopping payment on the check. No such conversion may lie against Inland.

■ Under Ark. Code Ann. § 4-3-420(a) (Repl. 1997), an instrument is converted if it is taken by transfer from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. Inland could not have converted the instrument since it did not take the check by transfer from Badar after it came into Badar's possession. Inland's liability on the check is for the underlying obligation the check was based upon, which was discharged when the check was paid.

■ Inland's alleged negligence in failing to timely stop payment on the check does not inure to ACE's benefit in a suit against Inland, but instead would be a defense the bank might use as a defendant to the extent Inland's negligence contributed to the loss. *See* Ark. Code Ann. § 4-3-406 (Repl. 1997).

We affirm.